**TREEHOUSE LAW, LLP**
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
Ruhandy Glezakos (SBN 307473)
10250 Constellation Blvd., Suite 100
Los Angeles, CA 90067
Telephone: (310) 751-5948
bheikali@treehouselaw.com
jnassir@treehouselaw.com
rglezakos@treehouselaw.com

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
Alan Gudino (SBN 326738)
agudino@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLBY TUNICK, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>TAKARA SAKE USA INC.,<br><br>     Defendant. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *et seq.*)<br>2. VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *et seq.*)<br>3. VIOLATION OF UNFAIR COMPETITION LAW (CAL BUS. & PROF. CODE §§ 17200, *et seq.*)<br>4. BREACH OF EXPRESS WARRANTY (CAL. COM. CODE § 2313)<br>5. BREACH OF IMPLIED WARRANTY (CAL. COM. CODE § 2314)<br>6. UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Colby Tunick ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, brings this Class Action Complaint against Takara Sake USA Inc. ("Defendant"), based upon personal knowledge as to himself, and upon information, investigation and belief of his counsel.

## INTRODUCTION

1.      This class action seeks to challenge Defendant's false and deceptive practices in the marketing and sale of a number of its "Sho Chiku Bai" branded sakes (the "Products").[1]

2.      Defendant packages and labels the Products in a manner which creates the false and misleading impression that the Products are made in Japan. Specifically, all of the Products bear: (1) the "Sho Chiku Bai" Japanese brand name; (2) large, conspicuous Japanese lettering; and (3) a gold emblem on the front and center of the Products' bottle which states "Licensed by TaKaRa Japan, Since 1851."

3.      Unbeknownst to consumers however, the Products are not made in Japan, but California.

4.      By way of its false marketing and labeling, Defendant knowingly and intentionally capitalizes on consumers' desire to purchase authentic Japanese sakes.

5.      As a result of Defendant's false labeling scheme, consumers seeking an authentic Japanese sake, including Plaintiff, are misled into believing that is what they are getting when they purchase the Products.

6.      Because the Products are not made in Japan, Defendant's deceptive marketing and labeling scheme violates well-established federal and state consumer protection laws aimed at preventing this exact type of fraudulent scheme.

7.      Absent class relief, Defendant's fraud will go unchecked to the detriment of consumers who are harmed financially and otherwise deprived of the 'benefit of the bargain' when they purchase an inauthentic product at a premium price when they otherwise would not have purchased the product.

---

[1] The "Products" are further defined in Paragraph 28.

CLASS ACTION COMPLAINT

8.      Defendant's illegal conduct will also continue to harm other law-abiding brands, including smaller companies in Japan who similarly seek to leverage consumer demand for authentic Japanese sake, but who play by the rules. Defendant's conduct stifles competition, reduces consumer choice, and leads to consumers paying higher prices at the cash register for inferior goods.

9.      Plaintiff and other consumers purchased the Products and paid a premium price based upon their reliance on Defendant's advertising the Products as authentic Japanese-made sakes. Had Plaintiff and other consumers been aware that the Products were not made in Japan, they would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiff and Class members have been injured by Defendant's deceptive business practices.

10.     Plaintiff brings this action individually and on behalf of those similarly situated to represent a Nationwide Class, a California Class, and a California Consumer Subclass of consumers who purchased the Products for dual primary objectives. Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Classes, a monetary recovery of the price premium consumers overpaid for the Products due to the false and deceptive labeling, consistent with permissible law (including, for example, damages, restitution, disgorgement, and any applicable penalties/punitive damages, solely to the extent that those causes of action permit). More importantly, Plaintiff seeks injunctive relief in the form of an order requiring Defendant to change its unlawful advertising and labeling practices for the benefit of consumers, including Plaintiff and the Classes.

## **JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Defendant is a citizen of a state different from at least some members of the proposed Classes.

12.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California, through its sale of the goods and products, including the Products at issue here, in California and to California consumers.

13.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Takara Sake USA Inc. resides in this District.

## PLAINTIFF

14.     Plaintiff is a citizen of California and currently resides in San Diego, California. In or around August 2020, Plaintiff purchased the Sho Chiku Bai Nigori Unfiltered Sake Product from a Cheers Deli and Liquor store located in San Diego, California. Plaintiff reasonably believed the Product was made in Japan based on the "Sho Chiku Bai" brand name, Japanese lettering displayed on the front label of the Product, as well as the gold emblem stating "Licensed by TaKaRa Japan, Since 1851" on the front label of the Product. These labels were prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Product. Had Plaintiff known the Product was not made in Japan, he would not have purchased it, or would have paid significantly less for it. Plaintiff spent money to purchase a product that was different from what he expected, and Plaintiff did not receive the benefit of the bargain. As such, Plaintiff has been injured as a direct result of Defendant's conduct.

15.     Despite Defendant's misrepresentations, Plaintiff would purchase the Products, as advertised, if they were actually made in Japan. Absent an injunction of Defendant's deceptive advertising, Plaintiff will be unable to rely with confidence on Defendant's advertising of the Products in the future. Furthermore, while Plaintiff currently believes the Products' labeling is inaccurate, he lacks personal knowledge as to Defendant's specific business practices, and thus, he will not be able determine whether the Products are actually made in Japan. This leaves doubt in his mind as to the possibility that at some point in the future the Products could be made in accordance with the representations on the Products' front labels. This uncertainty, coupled with Plaintiff's desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the alleged misleading representations. In addition, other Class members will continue to purchase the Products, reasonably but incorrectly believing that they are made in Japan.

## DEFENDANT

-3-

16.     Defendant Takara Sake USA Inc. is a corporation with its principal place of business in Berkeley, California. Defendant is responsible for the manufacturing, labeling, advertising, distribution and sale of the Products nationwide, including in this District. Based on information and belief, the manufacturing and decision-making behind the labeling of the Products takes place in Berkeley, California.

17.     In committing the wrongful acts alleged herein, Defendant planned, participates in, and furthers a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Products. Defendant participates in the making of such representations in that it disseminates or causes to be disseminated said misrepresentations.

18.     Defendant, upon becoming involved with the manufacture, distribution, advertising, marketing, and sale of the Products, knew or should have known that the claims about the Products and, in particular the claims suggesting that the Products are "Japanese" products, are fraudulent. Defendant affirmatively misrepresents the nature and characteristics of the Products to convince the public to purchase and consume the Products, resulting in significant profits to Defendant, all to the damage and detriment of the consuming public.

## FACTUAL ALLEGATIONS

**A.     The Geographic Origin of a Product is Important to Consumers**

19.     Manufacturers and marketers use origin claims to distinguish their products from other products, knowing consumers rely on the accuracy of those claims in making their purchasing decisions. In fact, consumers are willing to pay premium prices for products that are authentically connected to a significant geographical area. Some well-known examples of premium origin products are authentic Mexican tortillas, Belgian Chocolate, and Napa, California wines.

20.     **Consumers Legal Remedies Act.** Due to the import consumers put on origin advertising claims, the California state legislature has outlawed using "deceptive representations or designations of geographic origin in connection with goods or services." Cal. Civ. Code § 1770(a)(4).

21.     **FTC Guidelines.** The United States Federal Trade Commission ("FTC") similarly

-4-

created standards regarding origin claims to help companies avoid making misleading and deceptive claims. For example, the FTC has deemed it an unfair or deceptive act or practice if a product is advertised as made in the United States, unless "all or virtually all" of the product is made in the United States. 16 C.F.R. § 323.2. The FTC guidelines further demonstrate that companies are aware that origin claims are material to consumers and may use such claims to deceive consumers, influence purchasing decisions, and unfairly gain advantage in the marketplace.

22.    **Case Law.** Courts around the country find cases involving false and deceptive origin advertising claims meritorious. *See, e.g.*, *De Dios Rodriguez v. Ole Mexican Foods*, 2021 U.S. Dist. LEXIS 85725 (C.D. Cal. Apr. 22, 2021) (denying defendant's motion to dismiss because the plaintiff plausibly alleged the statement "***A Taste of Mexico!***" and an image of a Mexican flag may reasonably convey the products are made in Mexico) (emphasis added); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453 (S.D.N.Y. 2020) (denying defendant's motion to dismiss because the court could not conclude, as a matter of law, that no reasonable consumer would view the "Belgium 1926" label to mean the chocolate products were manufactured in Belgium); *Peacock v. Pabst Brewing Co., LLC*, 491 F. Supp. 3d 713 (E.D. Cal. Oct. 1, 2020) (holding defendant's "***Olympia Beer***" brand name, coupled with an image of a waterfall that looked "just like" a waterfall from Olympia, Washington, could deceive reasonable consumers, even though the packaging did not contain a map pinpointing the alleged misrepresentation or an explicit statement regarding origin (emphasis added); "at this early stage, the Court must take Plaintiff's allegations as true and draw all reasonable inferences in his favor. Although Olympia's packaging does not contain a map pinpointing the alleged misrepresentation or an explicit statement regarding origin, Plaintiff alleges enough facts to draw a reasonable inference that a reasonable consumer would believe Olympia Beer is brewed with water from the Olympia area of Washington."); *Broomfield v. Craft Brew Alliance, Inc.*, 2017 U.S. Dist. LEXIS 142572 (N.D. Cal. Sept. 1, 2017) (finding inexplicit packaging and labeling statements and imagery that related to Hawaii, when taken in context, "amount to specific and measurable representations that could deceive consumers into believing that they were purchasing beer made in Kona, Hawaii," where such marketing claims included: a front

-5-

label image of the Hawaiian island chain alongside the phrase "**Liquid Aloha**" and packaging *imagery of hula dancers and nature* associated with Hawaii (such as orchids, flowers, volcanoes, palm trees, surfers, canoes, waterfalls); "**Hawaii is a state as well as a state of mind**") (emphasis added).

23.    California law, FTC guidelines, and the overwhelming majority of false advertising case law show that accurate origin claims are important to consumers and that consumers are willing to pay a premium for products labeled as such.

**B.    Consumer Demand for Authentic Japanese Sake**

24.    Japan is known for its cuisine, including its mastery in brewing and manufacturing sake, a Japanese alcoholic beverage made from fermented rice.

25.    Sake is Japan's national beverage and plays an important role in Japanese culture.[2]

26.    Consumer demand for sake is high and continues to grow. Indeed, there is "evidence that the number of Americans who appreciate sake is on the rise. Japan's total sake exports to the U.S. were worth $45 million in the year to March 2016 and are growing fast: The trade was up 21 percent compared with the previous year, according to Japan's tax agency."[3]

**C.    The Products are not Made in "Japan"**

27.    Defendant's labeling and advertising campaign of the Products is overloaded with references to Japan. Through this false and deceptive labeling scheme, Defendant intentionally and strategically misleads consumers into believing that the Products are made in Japan.

28.    The Products at issue in this action include the following: (1) Sho Chiku Bai Nigori Unfiltered Sake (depicted above); (2) Sho Chiku Bai Classic Junmai; and (3) Sho Chiku Bai Tokubetsu Junmai.

29.    To capitalize on consumer demand for authentic Japanese sake and create the impression that the Products are Japanese-made sakes, Defendant markets and sells the Products with large, bold Japanese lettering throughout the Products' front labels. Directly above the Japanese

---

[2] Ashley Owen, *A Handy Guide To Sake - Japan's National Drink*, Japan Today, https://japantoday.com/category/features/food/a-handy-guide-to-sake-japan's-national-drink (last visited January 2, 2023)
[3] https://www.nbcnews.com/news/world/japan-falls-out-love-sake-brewers-look-west-n847916

CLASS ACTION COMPLAINT

lettering, Defendant places a gold emblem which states "Licensed by TaKaRa Japan, Since 1851." Further, all of the Products utilize the brand name "Sho Chiku Bai," a Japanese phrase meaning "the Three Friends of Winter." Together, these representations are referred to as the "Japanese Representations." A representative example of the Products is depicted below:





30.     Consumers expect to receive truthfully labeled goods. Defendant, however, intentionally misleads consumers in California and nationwide to believe the Products are Japanese-made.

31.     Based on Defendant's Japanese Representations, consumers purchasing the Products reasonably expect that the Products are brewed in Japan.

32.     Unfortunately for consumers, Defendant engages in false and misleading labeling to boost sales for the Products, all at the expense of unsuspecting consumers. Indeed, the Products are not made in Japan, but Berkeley, California.

33.     As such, the labeling of the Products is false and deceptive.

34.     Notably, Defendant also manufactures and sells sake products ***actually made in Japan***, with substantially similar labeling. For example, Defendant's Sho Chiku Bai Shirakabegura Mio Sparkling Sake, depicted below, is made in Nara, Japan:[4]



---

[4] https://www.takarasake.com/products/sake/sho-chiku-bai-shirakabegura-mio-sparkling-sake?id=33. Plaintiff did not visit the Takara website prior to his purchase of the Product.

35.     As with the authentic Japanese sake made by Defendant depicted above, the Products at issue also implement Japanese lettering throughout the front labeling, as well as the Japanese word "Mio", which means "Beautiful." The Products here go one step further in representing to be from Japan, as Defendant includes a gold emblem which warrants that the Products are licensed Japanese products.

36.     As the entity responsible for developing, manufacturing, labeling, advertising, distributing and selling the Products, Defendant knew or should have known that the Products are falsely and deceptively advertised as authentic Japanese sake made in Japan. Moreover, Defendant knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendant's front label representations and be deceived. Nonetheless, Defendant deceptively advertises the Products with the Japanese Representations in order to capitalize on demand for authentic Japanese sake and gain an unfair advantage in the market.

37.     Further, as one of the leading manufacturers of sake sold in the United States, Defendant also knew or should have known that *similar representations have found to be plausibly deceptive by a California district court*. Specifically, in *Shalikar v. Asahi Beer U.S.A., Inc.*, No. LACV1702713JAKJPRX, 2017 WL 9362139 (C.D. Cal. Oct. 16, 2017), Judge John A. Kronstadt denied defendant's motion to dismiss when plaintiff plausibly alleged that the "Asahi" brand name, combined with various Japanese letters and phrases, "could give rise to a reasonable inference or belief that the Product was produced in Japan," even though the product label does not directly state "Made in Japan.". Here, the Products not only also utilize a significant amount of Japanese lettering throughout the front label and bear the Japanese brand name "Sho Chiku Bai," but the Products also include a gold emblem which warrants that the Products are licensed Japanese products.

38.     Consumers are willing to pay more for the Products based on the belief that the Products are made in Japan. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known the truth about them. Thus, through the use of misleading representations, Defendant commands a price that Plaintiff and the Classes would not have paid had they been fully informed.

39.     Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

**D.     The Products are Substantially Similar**

40.     As described herein, Plaintiff purchased the Sho Chiku Bai Nigori Unfiltered Sake Product (the "Purchased Product"). The additional Products (collectively, the "Unpurchased Products") are substantially similar to the Purchased Product.

        a.  **Defendant.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

        b.  **Brand.** All Products are sold under the same brand name: Sho Chiku Bai.

        c.  **Purpose.** All Products are sake.

        d.  **Deceptive Labeling.** All Products implement the same deceptive labeling—(1) the "Sho Chiku Bai" Japanese brand name; (2) large, conspicuous Japanese lettering; and (3) a gold emblem on the front and center of the Products' bottle which states "Licensed by TaKaRa Japan, Since 1851. Yet none of the Products are made in Japan.

        e.  **Misleading Effect**. The misleading effect of the labeling and marketing on consumers is the same for all Products—consumers over-pay a premium for authentic Japanese products but receive Products that are not made in Japan, in violation of well-established state and federal law.

**E.     No Adequate Remedy at Law.**

41.     Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

        a.  **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between

approximately 2 and 6 years. Thus, California class members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products as Japanese products, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the labeling and advertising. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages

under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c.  **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products as alleged herein. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts.  Such disclosures would include, but are not limited to, publicly disseminated statements that the Products labeling and advertising is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature.  An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d.  **Public Injunction.** Further, because a "public injunction" is available under the

UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves his right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**Nationwide Class**
All residents of the U.S. who purchased any of the Products within the applicable statute of limitations period ("Nationwide Class").

**California Class**
All residents of California who purchased any of the Products within the applicable statute of limitations period ("California Class").

**California Consumer Subclass**
All residents of California who purchased any of the Products for personal, family, or household purposes, within the applicable statute of limitations period ("California Consumer Subclass") (together with the Nationwide Class, and the California Class, the "Classes").

43. Excluded from the Classes are the following individuals and/or entities: Defendant and their parents, subsidiaries, affiliates, officers and directors, current or former employees, and

-13-

any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

44.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

45.     Plaintiff is a member of all the Classes.

46.     **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by the Defendant's records. At a minimum, there likely are at least tens of thousands of Class members.

47.     **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

   a.   whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

   b.   whether reasonable consumers would rely upon Defendant's representations about the Products and reasonably believe the Products are made in Japan;

   c.   whether Defendant knew or should have known its representations were false or misleading;

   d.   whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

   e.   whether certification of each Class is appropriate under Rule 23;

   f.   whether Plaintiff and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief; and

   g.   the amount and nature of the relief to be awarded to the Plaintiff and the Classes, including whether Plaintiff and the Classes are entitled to punitive damages.

48.     **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Products. Plaintiff and members of the Classes

relied on the representations made by the Defendant about the Products prior to purchasing the Products. Plaintiff and the members of each Class paid for Defendant's Products and would not have purchased them (or would have paid substantially less for them) had they known that the Defendant's representations were untrue.

49.     **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with the interests of the members of the proposed Classes they seek to represent, and they have retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

50.     **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

51.     **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendant.

52.     **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

53.     **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or

-15-

refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

54.     **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### FIRST CLAIM FOR RELIEF

**Violation of California's Consumers Legal Remedies Act**

**California Civil Code § 1750, *et seq.***

(***For the Nationwide Class, or in the alternative, the California Consumer Subclass***)

55.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

56.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, the California Consumer Subclass against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

57.     The Products are "good[s]" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

58.     Cal. Civ. Code § 1770(a)(4) prohibits "[u]sing deceptive representations or designations of geographic origin in connection with goods or services." By labeling the Products with the Japanese Representations, Defendant has used a deceptive representation of geographic origin in connection with goods. Therefore, Defendant has violated section 1770(a)(4) of the CLRA.

59.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" By labeling the Products with the Japanese Representations, Defendant has represented and continues to represent that the Products have characteristics (i.e., are made in Japan) that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

60.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of

another." By labeling the Products with the Japanese Representations, Defendant has represented and continues to represent that the Products are of a particular standard (i.e., made in Japan) that they do not meet. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

61. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By labeling the Products with the Japanese Representations, Defendant has advertised the Products with characteristics it intended not to provide to consumers. As such, Defendant has violated section 1770(a)(9) of the CLRA.

62. At all relevant times, Defendant has known or reasonably should have known that the Japanese Representations on the Products are false and deceptive, and that Plaintiff and other members of the Classes would reasonably and justifiably rely on these representations when purchasing them. Nonetheless, Defendant deceptively advertises the Products as such in order to deceive consumers into believing they are purchasing sake from Japan.

63. Plaintiff and members of the Classes have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

64. Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products were not made in Japan.

65. Under Cal. Civ. Code § 1782, on October 27, 2022, Plaintiff sent a notice letter by certified mail to Defendant, notifying it of his intent to pursue a claim for damages under the CLRA (as well as other statutes) on behalf of himself and all others similarly situated, and gave Defendant an opportunity to cure, consistent with Cal. Civ. Code § 1782. Defendant received the letter on October 31, 2022. More than 30 days has passed since Defendant's receipt of the notice letter, yet Defendant has not cured their deceptive conduct. As such, Plaintiff seeks damages under the CLRA, as well as injunctive relief and all other available remedies.

CLASS ACTION COMPLAINT

66.     Attached hereto as Exhibit A is a venue declaration executed by Plaintiff pursuant to Cal. Civ. Code 1780(d).

## SECOND CLAIM FOR RELIEF

### Violation of California's False Advertising Law

### California Business & Professions Code § 17500, *et seq*

### (*For the Nationwide Class, or in the alternative, the California Class*)

67.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

68.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, the California Class against Defendant pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

69.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

70.     Defendant has represented and continues to represent to the public, including Plaintiff and members of the proposed Classes, through its deceptive labeling, that the Products are made in Japan. Because Defendant has disseminated false and misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be false and misleading, Defendant has violated the FAL.

71.     As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the proposed Classes. Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to them, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL, or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff

-18-

1    and members of the proposed Classes may be irreparably harmed and/or denied an effective and

2    complete remedy.

3                            **THIRD CLAIM FOR RELIEF**

4              **Violation of California's Unfair Competition Law ("UCL"),**

5              **California Business & Professions Code § 17200,** *et seq.*

6              (***For the Nationwide Class, or in the alternative, the California Class***)

7        72.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs

8    and incorporates the same as if set forth herein at length.

9        73.    Plaintiff brings this claim individually and on behalf of the members of the proposed

10   Nationwide Class, or in the alternative, the proposed California Class against Defendant.

11       74.    The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair

12   competition shall mean and include unlawful, unfair or fraudulent business practices and unfair,

13   deceptive, untrue or misleading advertising . . . ."

14       75.    **False Advertising Claims.** Defendant in its advertising and packaging of the

15   Products makes false and misleading statements regarding the quality and characteristics of the

16   Products, particularly marketing and representing the Products as Japanese-made sake. Such claims

17   appear on the label, packaging, and advertising of the Products, which are sold at retailers in the

18   state of California and across the nation, as well as on Defendant's official website.

19       76.    **Deliberately False and Misleading.** Defendant does not have any reasonable basis

20   for its claims about the Products because the Products are not made in Japan. Defendant knew and

21   knows that the Products are not truly or manufactured in Japan, yet Defendant intentionally

22   advertised and marketed the Products to deceive reasonable consumers into believing that Products

23   are made in Japan.

24       77.    **False Advertising Claims Cause Purchase of Products.** Defendant's labeling and

25   advertising of the Products led to, and continues to lead to, reasonable consumers, including

26   Plaintiff, believing that the Products are made in Japan.

27       78.    **Injury in Fact.** Plaintiff, the Nationwide Class, and the California Class have

28   suffered injury in fact and have lost money or property as a result of and in reliance upon

Defendant's False Advertising Claims—namely Plaintiff, the Nationwide Class, and the California Class lost the purchase price for the Products they bought from the Defendant.

79.     **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

80.     **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

81.     **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

82.     **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff, the Nationwide Class, and the California Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiff, the Nationwide Class, and the California Class seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

83.     **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff, the Nationwide Class, and the California Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff, the Nationwide Class,

and the California Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff, the Nationwide Class, and the California Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

84. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff, the Nationwide Class, and the California Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

### A. "Unfair" Prong

85. **Unfair Standard**. Under California's Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200, *et seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403

(2006).

86. **Injury**. Defendant's action of labeling and advertising the Products as if they were made in Japan when they were not does not confer any benefit to consumers. Defendant's action of labeling and advertising the Products as if they were made in Japan when they were not causes injuries to consumers who do not receive Products they reasonably expected.

87. **Balancing Test**. Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. In so doing, they "weigh the utility of the Defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

88. **No Utility**. Here, Defendant's conduct of labeling the Products as alleged herein when the Products are not made or manufactured in Japan has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

89. **Legislative Declared Policy**. Some courts hold that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

90. The California Legislature has outlawed making misleading claims of origin in connection with consumer goods. Cal. Civ. Code § 1770(a)(4). Therefore, Defendant's unfair conduct is tethered to the legislative declared policy regarding misleading claims of geographic origin.

91. **Unfair Conduct**. Defendant's labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

92. **Reasonably Available Alternatives**. There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products as alleged herein.

93. **Defendant's Wrongful Conduct**. All of the conduct alleged herein occurs and

continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

94. **Injunction**. Pursuant to Business and Professions Code Sections 17203, Plaintiff, the Nationwide Class, and the California Class seek an order from this Court enjoining Defendant from continuing to engage, use, or employ its practices of labeling the Products as alleged herein.

95. **Causation/Damages**. Plaintiff, the Nationwide Class, and the California Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff, the Nationwide Class, and the California Class paid an unwarranted premium for these Products. Specifically, Plaintiff, the Nationwide Class, and the California Class paid for the Products, which are not made in Japan. Plaintiff, the Nationwide Class, and the California Class would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### B. "Fraudulent" Prong

96. **Fraud Standard**. The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

97. **Fraudulent & Material Challenged Representations**. Defendant labeled and advertised the Products as alleged herein with the intent to sell the Products to consumers, including Plaintiff, the Nationwide Class, and the California Class. The labeling and advertising as alleged herein is false, and Defendant knew or should have known of its falsity. The labeling and advertising are likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

98. **Fraudulent Business Practice**. As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

99. **Reasonable and Detrimental Reliance**. Plaintiff, the Nationwide Class, and the California Class reasonably and detrimentally relied on the material and false labeling and

advertising to their detriment in that they purchased the Products.

100. **Reasonably Available Alternatives**. Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products in a way that suggests the Products are from Japan.

101. **Business Practice**. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

102. **Injunction**. Pursuant to Business and Professions Code Sections 17203, Plaintiff, the Nationwide Class, and the California Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products as alleged herein.

103. **Causation/Damages**. Plaintiff, the Nationwide Class, and the California Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products.  Specifically, Plaintiff, the Nationwide Class, and the California Class paid for products that they believed were made in Japan, when, in fact, the Products are made or manufactured in California. Plaintiff, the Nationwide Class, and the California Class would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### C. "Unlawful" Prong

104. **Unlawful Standard**. The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

105. **Violations of CLRA and FAL**.  Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "CLRA") and California Business and Professions Code sections 17500, *et seq.* (the "FAL") as set forth above in the sections regarding those causes of action.

106. **Additional Violations**. Defendant's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence

-24-

to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

107.   **Unlawful Conduct**. Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

108.   **Reasonably Available Alternatives**. Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products as alleged herein.

109.   **Business Practice**. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

110.   **Injunction**. Pursuant to Business and Professions Code Section 17203, Plaintiff, the Nationwide Class, and the California Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.

111.   **Causation/Damages**. Plaintiff, the Nationwide Class, and the California Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff, the Nationwide Class, and the California Class paid an unwarranted premium for the Products. Plaintiff, the Nationwide Class, and the California Class would not have purchased the Products if they had known that Defendant's purposely deceived consumers into believing that the Sho Chiku Bai Products are truly authentic Japanese sake. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

## <u>FOURTH CLAIM FOR RELIEF</u>

### **Breach of Express Warranty**

-25-

**Cal. Com. Code § 2313**

(***For the Nationwide Class, or in the alternative, the California Class***)

112.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

113.    Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant.

114.    California's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

115.    Defendant has expressly warranted on the Products' front labeling that the Products are made in Japan through the gold emblem located on the front of the Products' bottles, as the gold emblem warrants that the Products are licensed Japanese products. However, as alleged herein, this promise is false and misleading because the Products are not made in Japan.

116.    The Products' gold emblems and their representations are therefore: (a) an affirmation of fact or promise made by Defendant to consumers that the Products are made in Japan; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Products would conform to the affirmation of fact or promise. In the alternative, the representation is a description of goods which was made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product description.

117.    Plaintiff and members of the proposed Classes reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

118.    Defendant has breached the express warranties made to Plaintiff and members of the proposed Classes because the Products are not made in Japan, as promised.

119.    Plaintiff and members of the proposed Classes paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the

proposed Classes had known of the true nature of the Products, they would not have been willing to pay the premium price associated with it. As a result, Plaintiff and members of the proposed Classes suffered injury and deserve to recover all damages afforded under the law.

120.    In or around October 2022, Plaintiff discovered this breach of express warranty, and on October 27, 2022, Plaintiff sent a notice letter by certified mail to Defendant, notifying Defendant of the breach. Defendant received the letter on October 31, 2022. Defendant has not yet remedied its breach.

## FIFTH CLAIM FOR RELIEF

### Breach of Implied Warranty

### Cal. Com. Code § 2314

### (*For the Nationwide Class, or in the alternative, the California Class*)

121.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

122.    Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class, or in the alternative, the California Class against Defendant.

123.    California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

124.    California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

125.    Defendant is a merchant with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to consumers.

126.    By advertising the Products with the Japanese Representations outlined herein, Defendant made an implied promise that the Products were made in Japan. However, the Products have not "conformed to the promises…made on the container or label" because the Products are not from Japan. Plaintiff, as well as other consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable. Therefore, the Products are not merchantable under California

law and Defendant has breached its implied warranty of merchantability in regard to the Products.

127.    If Plaintiff and members of the proposed Classes had known that the Products' Japanese representations were false and misleading, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the proposed Classes have suffered injury and deserve to recover all damages afforded under the law.

128.    In or around October 2022, Plaintiff discovered this breach of express warranty, and on October 27, 2022, Plaintiff sent a notice letter by certified mail to Defendant, notifying Defendant of the breach. Defendant received the letter on October 31, 2022. Defendant has not yet remedied its breach.

## SIXTH CLAIM FOR RELIEF

### Quasi Contract/Unjust Enrichment/Restitution

***(for the Nationwide Class, or in the alternative, for the California Class)***

129.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

130.    Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant. Alternatively, Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant.

131.    As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the Classes to induce them to purchase the Products. Plaintiff and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendant through the Products' representations. Plaintiff and members of the proposed Classes have therefore been induced by Defendant's misleading and deceptive representations about the Products, and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

132.    Plaintiff and members of the proposed Classes have conferred a benefit upon Defendant as Defendant has retained monies paid to them by Plaintiff and members of the proposed Classes.

133.     The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the proposed Classes—i.e., Plaintiff and members of the proposed Classes did not receive the full value of the benefit conferred upon Defendant. Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon them.

134.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the proposed Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from their deceptive, misleading, and unlawful conduct as alleged herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for following relief:

A.     Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiff as Class representative, and appointment of his counsel as Class Counsel;

B.     A declaration that Defendant's actions, as described herein, violate the claims described herein;

C.     An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the proposed Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful act described above;

D.     An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E.     An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

F.     An award of nominal, punitive, and statutory damages;

G.     An award to Plaintiff and his counsel of reasonable expenses and attorneys' fees;

1    H.    An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to

2  the extent allowable; and

3    I.    For such further relief that the Court may deem just and proper.

4                           **<u>DEMAND FOR JURY TRIAL</u>**

5        Plaintiff, on behalf of himself and the proposed Classes, hereby demands a jury trial with

6  respect to all issues triable of right by jury.

7

8  DATED: February 8, 2023

                                        **TREEHOUSE LAW, LLP**

9

10                                       By: _____

11

12                                       Joshua Nassir (SBN 318344)
                                        Benjamin Heikali (SBN 307466)
13                                       Ruhandy Glezakos (SBN 307473)
                                        10250 Constellation Blvd., Suite 100
14                                       Los Angeles, CA 90067
                                        Telephone: (310) 751-5948
15                                       bheikali@treehouselaw.com
                                        jnassir@treehouselaw.com
16                                       rglezakos@treehouselaw.com

17                                       *Attorney for Plaintiff and the*
                                        *Putative Classes*
18

19                                       **CLARKSON LAW FIRM, P.C.**
                                        Ryan J. Clarkson (SBN 257074)
20                                       rclarkson@clarksonlawfirm.com
                                        Bahar Sodaify (SBN 289730)
21                                       bsodaify@clarksonlawfirm.com
                                        Alan Gudino (SBN 326738)
22                                       agudino@clarksonlawfirm.com
                                        22525 Pacific Coast Highway
23                                       Malibu, CA 90265
                                        Tel: (213) 788-4050
24                                       Fax: (213) 788-4070

25

26

27

28

CLASS ACTION COMPLAINT