UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLBY TUNICK,<br><br>    Plaintiff,<br><br>v.<br><br>TAKARA SAKE USA INC.,<br><br>    Defendant. | Case No. 23-cv-00572-TSH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART: MOTION TO DISMISS**<br><br>Re: Dkt. No. 20 |

## I. INTRODUCTION

Pending before the Court is Defendant Takara Sake USA Inc's ("Takara") Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). ECF No. 20. Plaintiff Tunick filed an Opposition (ECF No. 25) and Defendant filed a Reply (ECF No. 26). The Court finds this matter suitable for disposition without oral argument and **VACATES** the June 15, 2023 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the motion.[1]

## II. BACKGROUND

Plaintiff is a citizen of California and currently resides in San Diego, California. ECF No. 18 ¶ 15. Defendant Takara is a corporation with its principal place of business in Berkeley, California. *Id.* ¶ 17. Takara is responsible for the manufacturing, labeling, advertising, distribution, and sale of the "Sho Chiku Bai" branded sakes ("Products"). *Id.* ¶¶ 1, 17.

Sake is a traditional Japanese alcohol made from fermented rice and is Japan's national beverage. *Id.* ¶ 26. The Japanese government banned home brewing of sake without a license.

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 7, 11.

*Id.* ¶ 28. Almost all sake products in the United States are imported from Japan. *Id.* ¶ 33. In 2018, a research study indicated that nearly 80% of consumers stated that they only purchase sake produced in Japan. *Id.* ¶ 35.

In or around August 2020, Plaintiff purchased the 375 ml bottle of Sho Chiku Bai Nigori Unfiltered Sake Product in San Diego. *Id.* ¶ 15. Tunick believed this Product was made in Japan based on the "Sho Chiku Bai" brand name, Japanese lettering displayed on the front label of the Nigori Unfiltered Sake Product, as well as a gold emblem stating "Licensed by TaKaRa Japan, Since 1851" on the front label. *Id.* Had Tunick known the Product was not made in Japan, he would not have purchased it, or would have paid significantly less for it. *Id.*

Tunick alleges that (1) Sho Chiku Bai Nigori Unfiltered Sake, (2) Sho Chiku Bai Classic Junmai; and (3) Sho Chiku Bai Tokubetsu Junmai are all deceptively labeled and marketed as made in Japan, when they are actually produced in California. *Id.* ¶¶ 36-37. Tunick alleges that the Products' labels deceptively suggest they are made in Japan based on: 1) large, bold Japanese lettering throughout the Products' front labels; 2) a gold emblem which states "Licensed by TaKaRa Japan, Since 1851"; and the brand name "Sho Chiku Bai," which translates to "the Three Friends of Winter." *Id.* ¶ 38.

Tunick also alleges that Takara manufactures and sells products actually made in Japan with substantially similar labeling, which adds to the deception. *Id.* ¶ 43. Further, Tunick alleges that manufacturers negotiate with stores in an attempt to select prime shelf space for their products, and that Takara's products are placed right alongside products made in Japan. *Id.* ¶¶ 50, 52.

On February 8, 2023, Plaintiff filed a Complaint. ECF No. 1. On April 12, 2023, Takara filed a motion to dismiss the Complaint. ECF No. 13. On April 26, 2023, Tunick filed a First Amended Complaint ("FAC") alleging: 1) Violation of the Consumers Legal Remedies Act ("CLRA"); 2) Violation of the False Advertising Law ("FAL"); 3) Violation of Unfair Competition Law ("UCL"); 4) Breach of Express Warranty; 5) Breach of Implied Warranty; and 6) Unjust Enrichment. ECF No. 18. The Court then denied as moot Takara's motion to dismiss the original complaint. ECF No. 19. On May 10, 2023, Takara filed the instant Motion to

Dismiss pursuant to Rule 12(b)(6) (ECF No. 20) as well as a Request for Judicial Notice (ECF No. 21). Tunick filed an Opposition on May 24, 2023. ECF No. 25. Takara filed a Reply on May 31, 2023. ECF No. 26.

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876,

1    892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182

2    (1962)).

## IV.  DISCUSSION

### A.  Request for Judicial Notice

Takara requests the Court take judicial notice of a registration certificate with the United States Patent and Trademark Office showing Takara is the registered owner of the Sho Chiku Bai trademark, as well as product labels for eleven Takara products. ECF No. 21 at 2-4. Tunick does not oppose judicial notice of the registration certificate, but does oppose judicial notice of the product labels on the basis that Takara does not authenticate the time period when the labels were used. ECF No. 25 at 23-24.

Normally, when adjudicating a motion to dismiss brought pursuant to Rule 12(b)(6), the Court's consideration of extra-pleading materials is limited and matters outside of the pleading cannot be considered without converting the motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); 12(d). There are two exceptions, however, the incorporation-by-reference doctrine and judicial notice under Federal Rule of Evidence 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Under Federal Rule of Evidence 201, the Court may take judicial notice of matters that are (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Under the doctrine of incorporation-by-reference, the Court may consider a document not attached to the complaint provided the complaint "necessarily relies" on the document or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at

4

908.

Tunick does not contest Takara's request for judicial notice of the fact that Takara is the registered owner of the Sho Chiku Bai trademark, and the Court deems it suitable to do so under Federal Rule of Evidence 201(b). *See Culver v. Unilever United States, Inc.*, No. CV 19-9263-GW-RAOX, 2021 WL 10382839, at *6 (C.D. Cal. Jan. 21, 2021) (taking judicial notice of trademark registration with United States Patent and Trade Office); *Dumas v. Diageo PLC*, No. 15CV1681 BTM(BLM), 2016 WL 1367511, at *3 (S.D. Cal. Apr. 6, 2016) (taking judicial notice of same).

Takara additionally asks the Court to take judicial notice of the labels for the Products at-issue in this proceeding. ECF No. 20 at 2. Tunick objects to taking judicial notice of these labels because Takara's initial declaration did not provide the dates during which the labels were allegedly used. ECF No. 25 at 23. "'Courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging.'" *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1086-87 (N.D. Cal. 2017) (quoting *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1098-99 (S.D. Cal. 2015)); *Allen v. ConAgra Foods, Inc.*, No. 13-CV-01279-JST, 2013 WL 4737421, at *2 (N.D. Cal. Sept. 3, 2013); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1003 (N.D. Cal. 2012). The Court is also highly cognizant of the rationale behind the incorporation-by-reference doctrine which "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. Here, Tunick included photos of the front label of "representative example[s]" of the contested Products in his FAC. *See* ECF No. 18 ¶ 38. Tunick's claims are premised on these labels, and allegations that they are misleading to reasonable consumers because they falsely suggest the products are produced in Japan. However, by only including the front labels, or not including the labels at all for some versions of the Products, Tunick has omitted relevant and information potentially harmful to his claims. For example, the back of the label for the Product purchased by Tunick states that it is "Produced & Bottled by Takara Sake USA Inc, Berkeley, California." *See* ECF No. 22-10. While a disclosure on the back of the label is not necessarily fatal to Tunick's claims, its presence weakens said

claims.

While Tunick contests that the labels were not authenticated because the declaration did not confirm when the labels were in circulation and whether it was during the class period, Takara has submitted a supplemental declaration providing the relevant dates for the various labels. *See* ECF No. 26-1. *See also Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 893 (N.D. Cal. 2012) (noting that authenticity objections to judicial notice usually can be surmounted). Beyond the dates of the labels, which have now been provided, if Tunick has other objections to the authenticity or relevance of the documents, he does not raise them. *See Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1119 (S.D. Cal. 2021) ("Plaintiffs raise the specter of an authenticity dispute as to the labeling and high-resolution 'proof' specifications. . . . However, Plaintiffs do not detail how they are inauthentic, inaccurate, or disputed; instead, they merely question the manner in which they are presented before the Court."). The Court notes that some courts have taken issue with taking judicial notice of proofs of labels, as opposed to photographs of the labels on the products, but here Takara has provided photos of the products for the Court to understand how they appear to consumers. *Cf. Brown*, 913 F. Supp. 2d at 893 ("Plaintiffs make factual arguments about what the proofs do and do not show, and that is enough at the motion to dismiss stage so that the court should not take notice of them."). The Court finds that the labels of the Products are properly the subject of incorporation-by-reference where they form the basis of Tunick's claims and their relevance and authenticity are not contested. The Court thus **GRANTS** Takara's request to incorporate by reference Takara's Exhibits B-L.[2]

**B.     FAL, CLRA, and UCL Claims**

Takara argues that the Products packaging is not misleading as a matter of law because it does not specifically refer to where the products are manufactured on the front of the label, and the back of the label makes clear they are manufactured in California. ECF No. 20 at 11-14. Tunick argues that the "Licensed by TaKaRa Japan, Since 1851" gold emblem, the Sho Chiku Bai brand

---

[2] Takara attaches Exhibits AA and BB to its supplemental affidavit in its reply. *See* ECF No. 26-1. Takara does not request the Court take judicial notice of these documents or incorporate them by reference, and the Court does not elect to do so.

1  name, and the Japanese characters on the Products' labels create the impression that the products
2  are made in Japan. ECF No. 25 at 9. Further, the placement of the Products on shelves alongside
3  sakes made in Japan and the similarities of the Products' packaging with other Takara products
4  actually made in Japan adds to the deception. *Id.* at 3.

5  "Under the FAL, the CLRA, and the fraudulent prong of the UCL, conduct is considered
6  deceptive or misleading if the conduct is 'likely to deceive' a 'reasonable consumer.'" *Hadley v.*
7  *Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1063 (N.D. Cal. 2017) (quoting *Williams v. Gerber*
8  *Prod. Co*., 552 F.3d 934, 938 (9th Cir. 2008). "'Likely to deceive' implies more than a mere
9  possibility that the advertisement might conceivably be misunderstood by some few consumers
10 viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496,
11 508 (2003). "Rather, the phrase indicates that the ad is such that it is probable that a significant
12 portion of the general consuming public or of targeted consumers, acting reasonably in the
13 circumstances, could be misled." *Id.* "In determining whether a statement is misleading under the
14 statute, 'the primary evidence in a false advertising case is the advertising itself.'" *Colgan v.*
15 *Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 679 (2006), *as modified on denial of reh'g*
16 (Jan. 31, 2006) (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 110 (2003)).

17 Whether a business practice is deceptive is an issue of fact not generally appropriate for
18 decision on a motion to dismiss. *See, e.g., Williams*, 552 F.3d at 938-39 (citing *Linear Tech.*
19 *Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007)). The Ninth Circuit has
20 emphasized that under the reasonable consumer test, it is a "rare situation in which granting a
21 motion to dismiss is appropriate," *Williams*, 552 F.3d at 939, because "it raises questions of fact."
22 *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). Thus, for purposes of this order,
23 the Court need only decide whether it is plausible that "'a significant portion of the general
24 consuming public or of targeted consumers, acting reasonably in the circumstances, could be
25 misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie*, 105 Cal. App.
26 4th at 508).

27 The key issue, as identified in *Govea v. Gruma Corp.*, is whether Takara markets and
28 packages their sake Products in such a manner that a reasonable consumer would believe they are

1    made in Japan, when they, in fact, are not. No. CV 20-8585-MWF (JCX), 2021 WL 1557748, at
2    *4 (C.D. Cal. Mar. 1, 2021). In cases addressing similar theories that products are misleading as
3    to origin, courts have tended to focus on phrases or images which could be interpreted as
4    affirmative representations that the products are from a particular location. *See, e.g.*, *Sinatro v.*
5    *Barilla Am., Inc.*, No. 22-CV-03460-DMR, 2022 WL 10128276, at *13 (N.D. Cal. Oct. 17, 2022)
6    (finding phrase "Italy's #1 Brand of Pasta" along with the colors of the Italian flag and an "alleged
7    marketing campaign that emphasizes the company's Italian identity" "supports a reasonable
8    inference that the products were made in Italy from Italian ingredients."); *Peacock v. Pabst*
9    *Brewing Co., LLC*, 491 F. Supp. 3d 713, 719 (E.D. Cal. 2020) (finding "The Original Olympia
10   Beer" alongside "It's the Water" and the image of a waterfall from the area all plausibly implies
11   the water used in Olympia Beer comes from its original source in the Olympia area of
12   Washington); *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2017 WL 3838453, at
13   *6 (N.D. Cal. Sept. 1, 2017) (finding Hawaiian address, map of Hawaii identifying brewery, and
14   statement "visit our brewery and pubs whenever you are in Hawaii" were specific, measurable
15   representations that a reasonable consumer could take to mean the beer product was produced in
16   Hawaii), *on reconsideration in part*, No. 17-CV-01027-BLF, 2017 WL 5665654 (N.D. Cal. Nov.
17   27, 2017); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) (finding
18   that a reasonable consumer could plausibly understand the phrase "Belgium 1926" to be a
19   representation that Godiva chocolates were manufactured in Belgium); *Reed v. Gen. Mills, Inc.*,
20   No. C19-0005-JCC, 2019 WL 2475706, at *5 (W.D. Wash. June 13, 2019) (finding phrases "visit
21   our home farm," "Skagit Valley, WA, and "since 1972" "indicate a specific place that the Product
22   is produced and that the consumer can visit."); *Marty v. Anheuser-Busch Companies, LLC*, 43 F.
23   Supp. 3d 1333, 1340 (S.D. Fla. 2014) (finding phrases "Originate in Germany," Germany
24   Quality," and "Brewed Under the German Purity Law of 1516," along with overall marketing
25   campaign and company's 139-year history of being brewed in Germany, rendered plausible that
26   reasonable consumer may be misled to believe beer is an imported beer brewed in Germany);
27   *Wasser v. All Mkt., Inc.*, No. 16-21238-CIV, 2017 WL 11139701, at *5 (S.D. Fla. Nov. 13, 2017)
28   ("As alleged, 'Born in Brazil' is a statement of origin, like 'Originated in Germany,' rather than a

United States District Court
Northern District of California

reference to Vita Coco's Brazilian heritage, as the Defendant suggests.").

Tunick appears to argue that the phrase "Licensed by TaKaRa Japan, Since 1851" is equivalent to those listed above, and can be plausibly understood to represent that the Product purchased by Tunick has been a "licensed Japanese product since 1851." ECF No. 25 at 12. On its face, the Court would be inclined to conclude this interpretation is unreasonable. "License" as a verb means "to permit or authorize especially by formal license," or "to give permission or consent to." *License*, Merriam Webster, https://www.merriam-webster.com/dictionary/license (last visited June 11, 2023). The Court does not consider such a definition to be essentially synonymous with "produced," as in manufacture, or "to give being, form, or shape to." *Produce*, Merriam Webster, https://www.merriam-webster.com/dictionary/produce (last visited June 11, 2023). However, drawing all inferences in Tunick's favor, the FAC indicates that "license" carries a particular meaning in the context of sake and that production of sake, and who may produce it, is more limited in Japan. *See* ECF No. 18 ¶ 28 (noting that the Japanese government has banned home brewing of sake without a license). *See also Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) ("[I]nformation available to a consumer is not limited to the physical label and may involve contextual inferences regarding the product itself and its packaging."). Under these circumstances, the Court finds it plausible that reasonable consumers could interpret "Licensed by" to mean that the Products are made in Japan. *Cf. Sinatro*, 2022 WL 10128276, at *13 (rejecting defendant's argument that the court decide as a matter of law that "Italy's #1 Brand of Pasta" "can mean only one thing.").

In this context, along with the prominent Japanese characters, the brand name, and the strong historical and cultural associations between sake and Japan, the Court finds that a significant portion of the general consuming public or of targeted consumers, acting reasonably, could be misled. *See de Dios Rodriguez v. Ole Mexican Foods Inc.*, No. EDCV202324JGBSPX, 2021 WL 1731604, at *4 (C.D. Cal. Apr. 22, 2021) (finding the phrase "A Taste of Mexico," the brand name "La Banderita," Spanish words and phrases, as well as a Mexican flag front and center, could cause a reasonable consumer to believe the products are made in Mexico). There have been cases indicating that the "mere presence of words in a foreign language is insufficient to

1    mislead a reasonable consumer." *Eshelby v. L'Oreal USA, Inc.*, No. 22 CIV. 1396 (AT), 2023
2    WL 2647958, at *4 (S.D.N.Y. Mar. 27, 2023). The Court agrees with this general proposition, but
3    distinguishes this case, in part based on the possible interpretation of "Licensed by" and in part
4    based on the prominence of the Japanese language on Takara's Products. *Compare Culver v.*
5    *Unilever United States, Inc.*, No. CV 19-9263-GW-RAOX, 2021 WL 2943937, at *8 (C.D. Cal.
6    June 14, 2021), *appeal dismissed*, No. 21-55732, 2021 WL 6424469 (9th Cir. Dec. 29, 2021)
7    (While the front labels contain two words in the French language – which are prepositions (*i.e.*
8    'depuis' and 'que') – and two proper nouns (*i.e.* 'Paris' and 'Maille'), there are no concomitant
9    words or references to a geographic source or origin. . . . All of the remaining many words on the
10   front label are in English."); *Eshelby*, 2023 WL 2647958, at *4 ("the products Eshelby purchased
11   display product names in English which are not translated into French, as well as English product
12   descriptions preceding French translations where the English text is often in larger or bolded font
13   compared to smaller, unbolded French-language text."), *with Shalikar v. Asahi Beer U.S.A., Inc.*,
14   No. LACV1702713JAKJPRX, 2017 WL 9362139, at *7 (C.D. Cal. Oct. 16, 2017) (finding the
15   name "Asahi," the presence of Japanese Katakana script, and the presence of Japanese Kanji
16   characters, where the Japanese characters and script were allegedly prominently displayed gave
17   rise to a reasonable inference that the products were produced in Japan).

18   Takara argues that the labels on the back of the Products state that they are "PRODUCED
19   AND BOTTLED" in "BERKELEY, CALIFORNIA" and that they are "Products of U.S.A." ECF
20   No. 20 at 11. "[*If*] the defendant commits an act of deception, the presence of fine print revealing
21   the truth is insufficient to dispel that deception." *Ebner*, 838 F.3d at 966 (citing *Williams*, 552
22   F.3d 934) (emphasis in original). *Cf. Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 964
23   (N.D. Cal. 2017) ("Here, however, plaintiffs have alleged affirmative misrepresentations—either
24   express or implied—that the challenged products are healthy, which they assert is false or
25   misleading given the added sugar content."). Because the Court finds that the phrase "Licensed by
26   TaKaRa Japan, Since 1851" could, in the context of sake, be considered deceptive, the Court does
27   not conclude that the disclosures on the back of the label render the Products not misleading as a
28   matter of law.

10

The Court considers this action to likely be at the edges of a plausible claim. However, the Court is also cognizant that motions to dismiss should rarely be granted on false advertising claims and that such actions are highly fact-specific. "The facts here are not sufficiently clear to justify granting such a rare remedy. Rather, decision at this stage risks substituting the judgment of the Court as to what constitutes reasonableness for a judgment on the merits of that question, supported by fulsome development of the factual record." *Maisel v. Tootsie Roll Indus., LLC*, No. 20-CV-05204-SK, 2021 WL 3185443, at *4 (N.D. Cal. July 27, 2021).

Having said that, the Court does find that, to the extent Tunick's claims include "Sho Chiku Bai Classic Junmai Sake, 180 ml," "Sho Chiku Bai Classic Junmai Sake, 3 Liters," and "Sho Chiku Bai Classic Junmai Sake, 18 Liters," these Products do not display the gold emblem and the "Licensed by TaKaRa Japan, Since 1851" language. *See* ECF No. 22-2, 22-5, 22-6. Further, "Sho Chiku Bai Classic Junmai Sake, 3 Liters," and "Sho Chiku Bai Classic Junmai Sake, 18 Liters" state clearly on the front of the label that they are produced in Berkeley, CA. *See* ECF No. 22-5, 22-6. Without the gold emblem and corresponding language, with the presence of the front label disclosures on two of these Products, and with the relatively minor presence of Japanese language on the third Product, the Court does not find plausible Plaintiff's claims as to "Sho Chiku Bai Classic Junmai Sake, 180 ml," for the period up until 2021, "Sho Chiku Bai Classic Junmai Sake, 3 Liters," for the entire period, and "Sho Chiku Bai Classic Junmai Sake, 18 Liters" for the period up until 2021.[3]

Accordingly, to the extent Plaintiff's FAL, UCL, and CLRA claims were based on misrepresentations related to "Sho Chiku Bai Classic Junmai Sake, 180 ml," for the period up until 2021, "Sho Chiku Bai Classic Junmai Sake, 3 Liters," for the entire period, and "Sho Chiku Bai Classic Junmai Sake, 18 Liters" for the period up until 2021, the Court **GRANTS** dismissal of these claims. The Court **DENIES** Tunick leave to amend, as the Court finds such amendment

---

[3] Takara's supplemental declaration provides the relevant dates that the Product labels were in use, and the Court determines dismissal based off of those dates. The Court does not take judicial notice nor incorporate-by-reference labels of "Sho Chiku Bai Classic Junmai Sake, 180 ml," and "Sho Chiku Bai Classic Junmai Sake, 18 Liters" for the period after 2021 and thus does not dismiss any claims for these Products during that time period.

11

1  would be futile in light of the lack of misleading representations on the relevant labels. As to the
2  other Products, the Court **DENIES** dismissal of these claims.

**C.     Express Warranty Claim**

Takara argues that Tunick's express warranty claim fails because "Licensed by TaKaRa Japan" cannot be interpreted as a "promise" and thus cannot support an express warranty claim. ECF No. 20 at 14-15.

Under California law, "a plaintiff asserting a breach of warranty claim must allege facts sufficient to show that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Mattero v. Costco Wholesale Corp.*, 336 F. Supp. 3d 1109, 1115 (N.D. Cal. 2018) (citing *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010)). Statements on a product's label are part of the bargain between buyer and seller, *Weinstat*, 180 Cal. App. 4th at 1227, and create express warranties, *Mattero*, 336 F. Supp. 3d at 1115-16 (citing several cases). Courts look to the context of the statement to determine whether an express warranty has been made, including the label. *Id.* at 1116 (holding the "environmentally responsible" claim on defendant's dish soap and laundry detergent product labels constitutes an affirmative fact or promise that the products do not have "toxic and hazardous ingredients"); *Jones v. Nutiva, Inc.*, No. 16-CV-00711-HSG, 2016 WL 5210935, at *9 (N.D. Cal. Sept. 22, 2016) (finding plaintiff adequately alleged that a virgin coconut oil label, in its full context, constitutes an affirmative fact or promise). "The determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (Cal. Ct. App. 1985). As such, "courts liberally construe sellers' affirmations of quality in favor of injured consumers." *Nutivia, Inc.*, 2016 WL 5210935, at *9 (simplified).

"[C]ourts in this district regularly hold that stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty." *Hadley*, 273 F. Supp. 3d at 1095 (citing *Tsan v. Seventh Generation, Inc.*, No. 15-CV-00205-JST, 2015 WL 6694104, at *7

(N.D. Cal. Nov. 3, 2015) (because plaintiffs satisfied the reasonable consumer standard with respect to their California consumer protection claims, the same "allegations [we]re sufficient to state a claim for breach of express warranty")). *See also Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014) (denying motion to dismiss breach of express warranty claim "for the same reasons as the consumer protection and misrepresentation-based claims."). The Court finds that because Plaintiff's allegations regarding the gold emblem and the "Licensed by TaKaRa Japan" "are sufficient to state a claim under the reasonable consumer standard, they are likewise sufficient to state a claim for breach of express warranty." *Cooper v. Curallux LLC*, No. 20-CV-02455-PJH, 2020 WL 4732193, at *7 (N.D. Cal. Aug. 14, 2020). However, for the Products that do not contain the gold emblem nor the relevant statement, the Court finds an express warranty claim has not been pled.

Accordingly, the Court **GRANTS** dismissal of the express warranty claim to the extent it is based on the "Sho Chiku Bai Classic Junmai Sake, 180 ml," for the period up until 2021, "Sho Chiku Bai Classic Junmai Sake, 3 Liters," for the entire period, and "Sho Chiku Bai Classic Junmai Sake, 18 Liters," for the period up until 2021. The Court **DENIES** Tunick leave to amend, as Tunick's claim is based on the presence of the gold emblem and corresponding language and no such language appears on these Products. As to the other Products, the Court **DENIES** dismissal of the express warranty claim.

### D. Implied Warranty of Merchantability Claim

Takara argues that Tunick's implied warranty of merchantability claim fails because the allegations are conclusory. ECF No. 20 at 15.

The implied warranty of merchantability can be violated on a number of bases, such as that the product is not "fit for the ordinary purposes for which such good [is] used," or that it does not "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2); *Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975). The Court finds that the presence of the gold emblem, along with the prominent use of Japanese characters and the brand name could constitute a promise supporting an implied warranty of merchantability claim. Again, as the "Sho Chiku Bai Classic Junmai Sake, 180 ml," for the period up until 2021, "Sho Chiku Bai

13

1    Classic Junmai Sake, 3 Liters," for the entire period, and "Sho Chiku Bai Classic Junmai Sake, 18
2    Liters," for the period up until 2021, do not imply or make affirmations supporting that the
3    Products are made in Japan, the Court finds the implied warranty of merchantability claim fails as
4    to these Products.

5    Accordingly, the Court **GRANTS** dismissal of the implied warranty of merchantability
6    claim to the extent it is based on the "Sho Chiku Bai Classic Junmai Sake, 180 ml," for the period
7    up until 2021, "Sho Chiku Bai Classic Junmai Sake, 3 Liters," for the entire period, and "Sho
8    Chiku Bai Classic Junmai Sake, 18 Liters," for the period up until 2021.  The Court **DENIES**
9    Tunick leave to amend, as the Court finds such amendment would be futile in light of the lack of
10   misleading or erroneous affirmations of fact on the relevant labels.  As to the other Products, the
11   Court **DENIES** dismissal of the implied warranty of merchantability claim.

### E.   Unjust Enrichment Claim

Takara argues that Tunick's unjust enrichment claim fails along with his false advertising and warranty claims because Takara did not mislead Tunick as to the source of the Products. ECF No. 20 at 15.

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Id.* Restitution is not ordinarily available to a plaintiff unless "'the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust.'" *Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Assn.*, 205 Cal. App. 3d 1415, 1422 (Cal. Ct. App. 1988) (quoting 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 97, p. 126.).  Here, Tunick alleges the same misrepresentations that underlie his other claims, and thus he has sufficiently pled unjust enrichment. *See Maisel v. S.C. Johnson & Son, Inc.*, No. 21-CV-00413-TSH, 2021 WL 1788397, at *12 (N.D. Cal. May 5, 2021).  However, as to the three Products discussed above, the Court finds that Tunick has insufficiently alleged unjust enrichment.  Tunick argues that his unjust enrichment claim can exist separate from his false advertising claim. ECF No. 25 at 21-22. However, the Court finds his argument unclear, and the unjust enrichment claim appears to depend upon a finding that it is plausible that the labels are misleading. *Id.*  As the Court finds that the

14

labels for "Sho Chiku Bai Classic Junmai Sake, 180 ml," for the period up until 2021, "Sho Chiku Bai Classic Junmai Sake, 3 Liters," for the entire period, and "Sho Chiku Bai Classic Junmai Sake, 18 Liters," for the period up until 2021, are not plausibly misleading, the Court **GRANTS** dismissal of the unjust enrichment claim as to those products for those time periods. The Court **DENIES** Tunick leave to amend, as the Court finds such amendment would be futile in light of the lack of plausibly misleading representations on the relevant labels. As to the other Products, the Court **DENIES** dismissal of this claim.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** dismissal of all claims to the extent they are based on the purchase of the Products "Sho Chiku Bai Classic Junmai Sake, 180 ml," for the period up until 2021, "Sho Chiku Bai Classic Junmai Sake, 3 Liters," for the entire period, and "Sho Chiku Bai Classic Junmai Sake, 18 Liters," for the period up until 2021. The Court **DENIES** Tunick leave to amend as to those three relevant Products for those time periods. Otherwise, the Court **DENIES** dismissal of Tunick's claims.

**IT IS SO ORDERED.**

Dated: June 12, 2023

THOMAS S. HIXSON
United States Magistrate Judge

15