UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| COLBY TUNICK,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>TAKARA SAKE USA INC.,<br><br>　　　　　Defendant. | Case No. 23-cv-00572-TSH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. Nos. 55, 73 |

## I.    INTRODUCTION

Pending before the Court is Plaintiff Colby Tunick's Motion for Class Certification. ECF No. 55.[1] Defendant Takara Sake USA Inc. filed an Opposition (ECF No. 64) and Plaintiff filed a Reply (ECF No. 70). The Court held a hearing on April 17, 2025, and now issues this order. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.[2]

## II.    BACKGROUND

Plaintiff Colby Tunick is a citizen of California and resides in San Diego, California. Am. Compl. ¶ 15, ECF No. 18. Defendant Takara is a corporation with its principal place of business in Berkeley, California. *Id.* ¶ 17. Takara is responsible for the manufacturing, labeling, advertising, distribution, and sale of the "Sho Chiku Bai" branded sakes. *Id.* ¶¶ 1, 17.

Sake is a traditional Japanese alcohol made from fermented rice. *Id.* ¶ 26. Almost all sake

---

[1] For precision's sake, citations herein are to the unredacted versions of Plaintiff's Motion for Class Certification (ECF No. 56-2) and Reply (ECF No. 71-2), which were filed under seal. Most sections of these documents cited within this order can be found in the redacted versions that Plaintiff filed on the public docket. *See* ECF Nos. 55 (Redacted Motion for Class Certification), 70 (Redacted Reply).

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 7, 11.

products in the United States are imported from Japan. *Id.* ¶ 33. In 2018, a research study indicated that nearly 80% of consumers stated that they only purchase sake produced in Japan. *Id.* ¶ 35.

Tunick alleges that in or around August 2020, he purchased a 375 mL bottle of Sho Chiku Bai Nigori Unfiltered Sake in San Diego. *Id.* ¶ 15. Tunick believed this product was made in Japan based on the "Sho Chiku Bai" brand name, Japanese lettering displayed on the front label of the product, and a gold emblem stating "Licensed by TaKaRa Japan, Since 1851" on the front label. *Id.* Tunick would not have purchased the product or would have paid significantly less for it if he had known it was not made in Japan. *Id.*

Tunick alleges that (1) Sho Chiku Bai Nigori Unfiltered Sake, (2) Sho Chiku Bai Classic Junmai; and (3) Sho Chiku Bai Tokubetsu Junmai are all deceptively labeled and marketed as made in Japan, when they are actually produced in California. *Id.* ¶¶ 36–37, 41. Tunick alleges that the products' labels deceptively suggest they are made in Japan based on: 1) large, bold lettering in Japanese throughout the products' front labels; 2) a gold emblem above the Japanese lettering that states "Licensed by TaKaRa Japan, Since 1851"; and (3) the brand name "Sho Chiku Bai," a Japanese phrase (collectively, the "Japanese Origin Representations"). *Id.* ¶ 38.

Tunick alleges that Takara also manufactures and sells products made in Japan with substantially similar labeling, which, he alleges, adds to Takara's deception. *Id.* ¶ 43. Tunick alleges that manufacturers negotiate with stores in an attempt to select prime shelf space for their products and that Takara's products are shelved alongside products made in Japan. *Id.* ¶¶ 50, 52.

Plaintiff filed this case in this Court on February 8, 2023. ECF No. 1. On April 12, 2023, Takara filed a motion to dismiss the Complaint. ECF No. 13. On April 26, 2023, Tunick filed an Amended Complaint alleging: 1) violation of the California Consumers Legal Remedies Act ("CLRA"); 2) violation of the California False Advertising Law ("FAL"); 3) violation of the California Unfair Competition Law ("UCL"); 4) Breach of Express Warranty; 5) Breach of Implied Warranty; and 6) Unjust Enrichment. ECF No. 18. The Court then denied as moot Takara's motion to dismiss Tunick's original complaint. ECF No. 19. On May 10, 2023, Takara filed a motion to dismiss Plaintiff's claims in the Amended Complaint pursuant to Federal Rule of

United States District Court
Northern District of California

2

Civil Procedure 12(b)(6).  ECF No. 20.  On June 12, 2023, the Court granted in part and denied in part Defendant's motion to dismiss.  ECF No. 30.  The Court dismissed all claims to the extent they are based on the purchase of the products: "Sho Chiku Bai Classic Junmai Sake, 180 ml," for the period up until 2021; "Sho Chiku Bai Classic Junmai Sake, 3 Liters," for the entire class period; and "Sho Chiku Bai Classic Junmai Sake, 18 Liters," for the period up until 2021.  *Id.* at 15.

On October 17, 2024, Plaintiff filed the instant motion for class certification.  ECF No. 55.  On December 20, 2024, Takara filed its opposition to Plaintiff's motion.  ECF No. 64.  Plaintiff filed a reply on January 31, 2025.  ECF No. 70.  The Court held a hearing on April 17, 2025.[3]

## III.    LEGAL STANDARD

Plaintiff, as the party seeking class certification, "bear[s] the burden of demonstrating that [he has] met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).  Here, Plaintiff seeks certification under Rules 23(b)(2) and 23(b)(3).  Rule 23(b)(2) requires "the party opposing the class" to have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Class-certification analysis must be "rigorous" and "may entail some overlap with the merits of the plaintiff's underlying claim."  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (cleaned up).  However, Rule 23 does not give courts "license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id.*

---

[3] The Court overrules Defendant's objections at ECF No. 72 and therefore **DENIES** Plaintiff's motion to strike those objections (ECF No. 73) as moot.

# IV.   DISCUSSION

## A.    Substantive Claims of Proposed Class

Plaintiff defines his single proposed class to include: "All persons who, during the Class Period, purchased one or more of the Products in California for purposes other than resale at a retail location or online."  Not. Mot. Class Cert., ECF 55, ¶ 1.  The Class Period is February 8, 2019, through the present.  Not. Mot. Class Cert., ECF 55, ¶ 1 n.1; Mot. at 2 n.1.  The "Products" are: (1) Sho Chiku Bai Nigori Unfiltered Sake (375 mL, 750 mL, and 1.5 L) ("Nigori"); (2) Sho Chiku Bai Classic Junmai, (750 mL, 1.5 L) ("Classic Junmai"); (3) Sho Chiku Bai Tokubetsu Junmai (300 mL, 720 mL, 1.8 L) ("Tokubetsu Junmai").  Mot. at 2 n.2.

Plaintiff claims violations of California's CLRA, FAL, and UCL, breach of express and implied warranty, and unjust enrichment.  Am. Compl.

## B.    Rule 23(A)

"A representative plaintiff may sue on behalf of a class when the plaintiff affirmatively demonstrates the proposed class meets the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation."  *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002 (9th Cir. 2018).

### 1.    Numerosity

Under Rule 23(a)(1), Plaintiff must show that "the class is so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1). "In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it."  *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589-90 (N.D. Cal. 2015).  "[T]he numerosity requirement is usually satisfied where the class comprises 40 or more members."  *Huynh v. Harasz*, No. 14-cv-02367, 2015 WL 7015567, at *5 (N.D. Cal. Nov. 12, 2015) (internal citation omitted).

Plaintiff argues numerosity is satisfied because over 2.3 million units of the Products were sold in California between February 2019 and September 2024.  Mot. at 10.  Defendant argues that Plaintiff has failed to meet his burden of demonstrating numerosity because Plaintiff's contention that over 2.3 million units of Products were sold in California during the class period is based on a data set that includes products and product sizes that do not match the products at issue in this

United States District Court
Northern District of California

litigation.  Opp'n at 7.  *See* Decl. of Yutaka Eto ¶¶ 10–11, ECF No. 64-2 (averring that none of the UPC codes in the spreadsheet of Circana market data Plaintiff provides in support of its motion matches the UPC codes of the Products at issue).  Plaintiff submits a declaration by damages expert Colin Weir and argues in his Reply that the apparent discrepancies in the UPC codes stem from differences in coding and that "Class Products are readily apparent in the Circana dataset."  Reply at 15; Weir Reply, ECF No. 70-3 ¶¶ 20-30.  Plaintiff argues that even a fraction of the 2.3 million units listed in the Circana dataset satisfies the threshold for numerosity.

Defendant acknowledges that the Products are offered for retail sale in California.  "Where 'the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'"  *In re Abbott Lab'ys Norvir Anti-Tr. Litig.*, No. 04-cv-1511 CW, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (quoting Alba Cone & Herbert B. Newberg, *Newberg on Class Actions* § 3.3 (4th ed. 2002)).  The Court thus finds it can reasonably be inferred that at least forty people purchased one or more the Products for purposes other than resale during the class period.

Accordingly, the Court finds numerosity is satisfied.

### 2.    Commonality

"To show commonality, Plaintiffs must demonstrate that there are questions of fact and law that are common to the class."  *Ellis*, 657 F.3d at 981 (citing Fed. R. Civ. P. 23(a)(2)).  "A common question 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (quoting *Wal–Mart Stores*, 564 U.S. at 350).  To satisfy Rule 23(a)(2)'s commonality requirement, "[e]ven a single [common] question" is sufficient.  *Wal-Mart Stores, Inc.* 564 U.S. at 359 (cleaned up).  "In determining whether the 'common

1   question' prerequisite is met," the "[C]ourt is limited to resolving whether the evidence establishes

2   that a common question is *capable* of class-wide resolution, not whether the evidence in fact

3   establishes that plaintiffs would win at trial."  *Olean*, 31 F.4th at 666–67.

4        The Court finds commonality is met.  Plaintiff and the putative class members all

5   purchased one or more of the Products, which bore the same allegedly material and deceptive

6   Japanese Origin Representations.  *See Prescott v. Reckitt Benckiser LLC*, No. 20-cv-02101-BLF,

7   2022 WL 3018145, at *5-6 (N.D. Cal. July 29, 2022) (finding all putative class members had

8   "suffered the same injury" where it was "undisputed that every putative class member purchased

9   Woolite bottles displaying the phrases 'COLOR RENEW' and/or 'revives color.'").  At a

10  minimum, this raises the common question of whether those representations would mislead a

11  reasonable consumer to believe that the Products are made in Japan.

12       Accordingly, the Court finds commonality is satisfied.

13       **3.    Typicality**

14       The typicality requirement is satisfied if "the claims or defenses of the representative

15  parties are typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(3).  "The test of

16  typicality serves to ensure that the interest of the named representative aligns with the interests of

17  the class."  *Ruiz Torres*, 835 F.3d at 1141 (quotations and citations omitted).  "[A] class

18  representative must be part of the class and 'possess the same interest and suffer the same injury'

19  as the class members."  *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).

20  "Under the Rule's permissive standards, representative claims are 'typical' if they are reasonably

21  coextensive with those of absent class members; they need not be substantially identical."  *Ruiz*

22  *Torres*, 835 F.3d at 1141 (cleaned up).  "Measures of typicality include 'whether other members

23  have the same or similar injury, whether the action is based on conduct which is not unique to the

24  named plaintiffs, and whether other class members have been injured by the same course of

25  conduct.'"  *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

26       "A named plaintiff is not typical if 'there is a danger that absent class members will suffer

27  if their representative is preoccupied with defenses unique to it.'"  *DZ Rsrv. v. Meta Platforms,*

28  *Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (quoting *Hanon*, 976 F.2d at 508), *cert. denied sub nom.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Meta Platforms, Inc v. DZ Rsrv.*, 145 S. Ct. 1051 (U.S. Jan. 13, 2025).  "Credibility issues only

2    destroy typicality in 'unique situation[s]' where 'it is predictable that a major focus of the

3    litigation will be on a defense unique' to the named plaintiff."  *DZ Rsrv.*, 96 F.4th at 1239 (quoting

4    *Hanon*, 976 F.2d at 509).

5         On their face, Tunick's claims meet Rule 23's typicality requirement.  As consumer

6    purchasers of one or more of the Products, Tunick and the absent class members possess the same

7    interest.  Tunick and the absent class members were likewise allegedly injured by the same course

8    of conduct, as the Products all bore the same allegedly material and deceptive Japanese Origin

9    Representations.

10         Takara argues that Tunick's claims are not typical of the claims of the class because,

11    Takara contends, Tunick is not a member of the class and his credibility threatens to become a

12    major focus of the litigation.  Takara asserts that Tunick is not a member of the putative class

13    because he did not purchase the Sho Chiku Bai 375 mL sake as he claims.  Takara offers the

14    declaration of Manny Keriakos, who owned Cheers Deli in San Diego from 1989 to 2024.

15    Keriakos was "the primary person responsible for purchasing inventory" at Cheers Deli, where

16    Tunick alleges he purchased a  375 mL bottle of the Sho Chiku Bai Nigori Unfiltered sake.  Decl.

17    of Manny Keriakos ¶¶ 2–3, ECF No. 64-3; Am. Compl. ¶ 15.  Keriakos avers that Cheers Deli did

18    not stock Sho Chiku Bai Nigori Silky Mild 375 mL at any point during his tenure as owner.[4]  *Id.* ¶

19    4.  Keriakos avers that Cheers Deli only stocked three sake products during his tenure as owner

20    and that the only Sho Chiku Bai product he stocked was "750 mL bottles of Sho Chiku Bai sake."

21    *Id.* ¶ 5.  Takara argues that the Keriakos Declaration means that Tunick is not a member of the

22    class.

23         Takara's analogy to *Kandel v. Brother Int'l Corp.* in furtherance of this argument is

24    unavailing.  264 F.R.D. 630 (C.D. Cal. 2010).  In *Kandel*, the court found there was "significant

25    evidence" that the named plaintiffs had not purchased the products at issue or had purchased them

26    for business use and were thus not "consumers" with standing to bring claims under the CLRA.

27

28    _____

[4]  The Sho Chiku Bai Nigori Silky Mild sake is not among the Products at issue in this litigation.
*See* Am. Compl. ¶ 58.

7

1    *Id.* at 632–33.  Here, the only evidence Takara provides to indicate that Tunick is not a member of

2    the class is the Keriakos Declaration, apparently based solely on Keriakos's personal recollection

3    of over thirty years of store inventory, and citing no records or documentary evidence for support.

4    Tunick's complaint, declaration, and deposition testimony, on the other hand, consistently state

5    that Tunick purchased a bottle of Sho Chiku Bai Nigori Unfiltered sake at Cheers Deli in San

6    Diego.  Putting aside the absence of any other evidence regarding the store's inventory, the

7    Keriakos Declaration would demonstrate at most that Tunick did not purchase the sake at Cheers

8    Deli, rather than that he did not purchase the sake at all.  Plaintiff has satisfied his burden at the

9    class certification stage to demonstrate that Tunick has standing to raise his claims.

10    Takara further argues that the Keriakos Declaration raises serious questions regarding

11    Plaintiff's credibility that render Plaintiff's claims, and Takara's defenses to those claims, atypical

12    of the class as a whole.  Opp'n at 8–9.  The Keriakos Declaration potentially calls Tunick's

13    credibility and recollection into question, as do Tunick's inconsistencies about the year in which

14    he made the purchase.  *Compare* Am. Compl. ¶ 15 (2020), Tunick Decl. ¶ 3 (ECF No. 55-6)

15    (2020) *with* Tunick Dep. at 37:3-20 (Ex. C to Meckes Decl., ECF No. 64-1) (2022).  However, the

16    Court finds these issues can be readily addressed through cross examination of Tunick and

17    Keriakos at trial and do not risk becoming the focus of the litigation.  *See In re JUUL Labs, Inc.,*

18    *Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 962–63 (N.D. Cal. 2022) (finding

19    that credibility questions stemming from inconsistencies in plaintiff's testimony regarding when

20    he began to use defendant's product did not defeat typicality, as they could "be explored on cross-

21    examination").

22    Accordingly, the Court finds typicality is satisfied.

23    ### 4.    Adequacy

24    Rule 23(a)(4) requires the Court to determine if "the representative parties will fairly and

25    adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "To determine whether

26    named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the

27    named plaintiffs and their counsel have any conflicts of interest with other class members and (2)

28    will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

United States District Court
Northern District of California

8

*Ellis*, 657 F.3d at 985 (quotations and citations omitted).

Takara does not assert any conflicts of interest between Tunick and the proposed class or other putative class members. Defendant argues, however, that Tunick is an inadequate class representative because he has abandoned his role in the litigation to class counsel. Takara contends that Tunick was "unable to recall even the most basic details about his claims or the lawsuit" in his deposition and argues that his deposition testimony makes him an inadequate class representative. Opp'n at 9. "The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim, and will be deemed inadequate only if she is 'startlingly unfamiliar' with the case." *Californians for Disability Rts., Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008). Tunick testified that he was not familiar with his retained experts and could not recall how he paid for the Product he purchased or whether he had searched his credit card statements for that transaction. Tunick Dep. at 47:3-20, 103:2-12, 103:16-104:1 (Ex. C to Meckes Decl.). Takara further argues that Tunick is an inadequate class representative because he verified interrogatory responses that contained a material error (that he purchased the Nigori 375 mL sake in August 2020 rather than 2022). Opp'n at 10; Pl.'s Responses to Def.'s First Set of Interrogatories, Ex. E to Meckes Decl. at 2, 10.

The Court finds Tunick demonstrates a basic familiarity with the elements of his claims and his role as a named plaintiff in the action.[5] For instance, Tunick testified regarding the portions of the label he noticed that informed his belief that the Product he purchased was made in Japan. Tunick Dep. at 85:2–86:2, 87:10-25. The label elements Tunick identifies are consistent with the Japanese Origin Representations that form the basis of his claims, including the gold "licensed by" emblem that serves as the basis for Tunick's express warranty claim. *See, e.g.*, Am. Compl. ¶¶ 53–54, 57, 135–37. Tunick further testified that he had "made a good faith effort" to search his documents and belongings for a paper receipt of his purchase. Tunick Dep. at 104:17–105:1. Tunick testified that as class representative, he "[is] honest; make[s] [him]self available as

---

[5] Takara contends that Tunick "was unable to recall whether he was the plaintiff in the case at all," but this appears to reflect a lack of familiarity with legal terminology and not with Tunick's role in the litigation. Opp'n at 9–10; *see* Tunick Dep. at 31:6-11.

United States District Court
Northern District of California

1  needed by counsel to review documents" and "provide[s] testimony." Tunick Dep. at 36:3-13.

2  Given the low bar required to demonstrate adequacy under Rule 23(a)(4), the Court finds Tunick

3  will fairly and adequately protect the interests of the class as class representative.

4       "Adequate representation is usually presumed in the absence of contrary evidence."

5  *Californians for Disability Rts., Inc.*, 249 F.R.D. at 349.  Defendants do not contend that class

6  counsel's representation is inadequate.  Accordingly, the Court finds that Plaintiff's counsel

7  satisfy the requirement of adequacy of representation.

8       Accordingly, the Court finds the requirement of adequacy is satisfied.

9  **C.    Rule 23(B)(3)**

10      Rule 23(b)(3) requires: (1) the questions of law or fact common to members of the class

11  predominate over any questions affecting only individual members, and (2) a class action is

12  superior to other available methods for the fair and efficient adjudication of the controversy.  Fed.

13  R. Civ. Pro. 23(b)(3).

14      Takara does not contest that Plaintiff has satisfied the superiority element of Rule 23(b)(3).

15  The Court agrees that Plaintiff has demonstrated superiority in this case, where the costs of

16  litigation would eclipse any recovery by an individual consumer.  *See Wolin v. Jaguar Land Rover*

17  *N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("The purpose of the superiority requirement is

18  to assure that the class action is the most efficient and effective means of resolving the

19  controversy. . . . Where recovery on an individual basis would be dwarfed by the cost of litigating

20  on an individual basis, this factor weighs in favor of class certification.").  Takara argues,

21  however, that Plaintiff fails to meet the predominance requirement.

22      **1.    Predominance**

23      Plaintiffs have the burden to "marshal facts showing, by a preponderance of the evidence,

24  that class issues predominate" over individualized ones.  *Miles v. Kirkland's Stores Inc.*, 89 F.4th

25  1217, 1222 (9th Cir. 2024) (citing *Olean*, 31 F.4th at 664–65).  "For purposes of this analysis, [a]n

26  individual question is one where members of a proposed class will need to present evidence that

27  varies from member to member, while a common question is one where the same evidence will

28  suffice for each member to make a prima facie showing [or the issue is susceptible to generalized,

1   class-wide proof." *Ruiz Torres*, 835 F.3d at 1134 (cleaned up). "[T]o carry their burden of

2   proving that a common question predominates, [plaintiffs] must show that the common question

3   relates to a central issue in [their] claim." *Olean*, 31 F.4th at 665. "[M]ore important questions

4   apt to drive the resolution of the litigation are given more weight in the predominance analysis

5   over individualized questions which are of considerably less significance to the claims of the

6   class." *Ruiz Torres*, 835 F.3d at 1134.

7        As noted above, Tunick alleges violation of California's CLRA, FAL and UCL, breach of

8   express warranty, breach of implied warranty, and unjust enrichment.

### a.    Whether All Class Members Were Exposed to Alleged Misrepresentations

11        Takara argues that common issues cannot predominate because consumers purchase the

12   Products at different points of purchase, including in stores that clearly label the Products as made

13   in California and through online retailers whose listings do not show clear images of the "licensed

14   by" emblem. Takara further asserts that some consumers who purchase the Products online are

15   not actually exposed to all the alleged Japanese Origin Representations because the "Licensed By"

16   gold emblem is illegible on online retail platforms. Takara argues that prospective purchasers

17   cannot be misled by the gold emblem if they cannot read what it says.

18        Defendant argues that individualized questions about the circumstances of a customer's

19   exposure to the alleged Japanese Origin Representations will predominate over common questions

20   about whether those representations are misleading, because California retail stores often feature

21   the Products as "local" and online listings for the Products often include explicit statements that

22   the Products are manufactured in the United States or with ingredients from the United States.

23   Defendant offers pictures of its products shelved at Whole Foods Market locations in Lafayette,

24   CA and Los Angeles, CA, where the price tag included a label denoting it as "LOCAL Berkeley,

25   CA," and at a Cost Plus World Market, where it was described as "A fantastic, fresh-tasting Sake

26   from Berkeley, California." Decl. of Joseph A. Meckes ¶¶ 7, 8 & Exs. F, G to Meckes Decl., ECF

27   No. 64-1 at 1, 128–32. The Court finds this argument is insufficient to defeat predominance. As

28   to Plaintiff's UCL, FAL and CRLA claims, reliance is presumed by all consumers exposed to a

misrepresentation as long as the misrepresentation is material. *See Vasquez v. Superior Ct.*, 4 Cal. 3d 800, 814 (1971) ("[I]f the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class."); *see also Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) ("For a class action, an inference of reliance arises as to the entire class only if the material misrepresentations were made to all class members."). Plaintiff's breach of warranty and unjust enrichment claims are based on the alleged Japanese Origin Representations found on the label of the Products. *See* Am. Compl. ¶¶ 135–36 (alleging Takara expressly warranted that the Products were made in Japan through its gold "Licensed By" emblem and breached warranty because the Products were not made in Japan); ¶¶ 144, 146 (alleging Takara impliedly promised that the Products were made in Japan through the Japanese Origin Representations, and breached that implied warranty because the Products were not made in Japan); ¶ 151.

Plaintiff does not dispute that the "licensed by" emblem is illegible on the thirteen retail websites Takara cites as containing unclear images of the gold emblem on the bottle, nor does Plaintiff dispute that many of these websites include statements of the Products' provenance. *See* Declaration of Kristine Marmarian, ECF No. 64-5, and attached exhibits. Instead, Plaintiff accuses Takara of "cherry-picking" the online retailers it identified. The Court finds this accusation of cherry-picking is overblown given the references to two of those retailers, Total Wine and BevMo, by Tunick and one of his experts. *See* Tunick Dep. at 61:22–62:6 (testifying that "Total Wine comes to mind" as a retailer whose sake selection he liked); Weir Dep. at 40:3-5 (noting data responses from "Albertsons, BevMo, [and] Total Wine"); 41:11-15 (mentioning "retailers like Total Wine or Albertsons") (Meckes Decl., Ex. B).

Plaintiff argues that Takara's argument about online purchases mischaracterizes Plaintiff's claims, "which challenge the Products' overall misleading presentation through multiple Japanese Origin Representations," which are not limited to the "licensed by" emblem but also include the "Sho Chiku Bai" brand name and use of Japanese characters. Reply at 16. However, the Court previously found that in the absence of the "licensed by" emblem, these other representations are insufficient to state consumer law claims. *See* Order on Mot. to Dismiss at 11, ECF No. 30

12

(dismissing Plaintiff's claims as to all products that do not display the "licensed by" emblem).

Plaintiff further argues that class-wide exposure to the "licensed by" emblem can nevertheless be inferred because the emblem appears on the label each of the Products.  Reply at 16.  However, as Plaintiff acknowledges, it is "the likelihood that consumers saw the misleading statements during purchase" that allows courts to draw such an inference.  *Id.*; *see Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) ("Because the alleged misrepresentations appeared on the actual packages of the products purchased, there is no concern that the class includes individuals who were not exposed to the misrepresentation."); *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 895 (N.D. Cal. 2015) ("in numerous cases involving claims of false-advertising, class-wide exposure has been inferred because the alleged misrepresentation is on the packaging of the item being sold.  In such a case, given the inherently high likelihood that in the process of buying the product, the consumer would have seen the misleading statement on the product and thus been exposed to it[.]").  Plaintiff provides no authority supporting an inference of class-wide exposure to an alleged misrepresentation where it is undisputed that a subset of purchasers was not exposed to the alleged misrepresentation.  The Court finds Takara presents undisputed evidence that at least some online purchasers would not have been exposed to the "licensed by" emblem on the Products' front label, the exposure to which is critical to Plaintiff's claims.  Consumers who purchased the Products online remain part of the class defined by Plaintiff.  The Court thus finds that as to class members who purchased a Product from an online retailer, individual issues of whether class members would have been exposed to the text of the "licensed by" emblem predominate over common issues.

### b.     Elements of Plaintiff's Claims

#### i.     Consumer Law Claims: CLRA, UCL and FAL Claims

"Under the FAL, the CLRA, and the fraudulent prong of the UCL, conduct is considered deceptive or misleading if the conduct is 'likely to deceive' a 'reasonable consumer.'"  *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1063 (N.D. Cal. 2017) (quoting *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).  "In determining whether a statement is misleading under the statute, 'the primary evidence in a false advertising case is the advertising itself.'"

1  *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 679 (2006) (quoting *Brockey v.*

2  *Moore*, 107 Cal. App. 4th 86, 110 (2003)).

3       The CLRA requires a plaintiff to prove "not only that a defendant's conduct was deceptive

4  but that the deception caused them harm." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129

5  (2009). "Causation, on a class-wide basis, may be established by *materiality*. If the trial court

6  finds that material misrepresentations have been made to the entire class, an inference of reliance

7  arises as to the class." *Id.* "A representation is 'material,' . . . if a reasonable consumer would

8  attach importance to it *or* if 'the maker of the representation knows or has reason to know that its

9  recipient regards or is likely to regard the matter as important in determining his choice of

10  action.'" *Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1107 (9th Cir. 2013) (quoting *Kwikset Corp. v.*

11  *Superior Ct.*, 51 Cal. 4th 310, 333 (2011)) (emphasis in original). A plaintiff is not required to

12  prove materiality to satisfy the element of predominance under Rule 23(b)(3). *See Amgen*, 568

13  U.S. at 467–68 ("there is no risk whatever that a failure of proof on the common question of

14  materiality will result in individual questions predominating. . . . Instead, the failure of proof on

15  the element of materiality would end the case for one and for all") (considering element of

16  materiality in securities fraud class action).

17       Plaintiff asserts that the common issues of whether Defendant misrepresented the Products

18  as authentic Japanese-made sake and whether the misrepresentations were likely to deceive a

19  reasonable consumer predominate because each class member was exposed to the same Japanese

20  Origin representations. Plaintiff further asserts that common questions predominate as to the

21  "unfair," "unlawful," and "fraudulent" prongs of the UCL.

22       To establish that the label elements mislead consumers in violation of the UCL, FAL and

23  CLRA, Plaintiff offers the expert report of Robert Klein, who developed an online survey to

24  determine whether potential sake purchasers are likely to mistakenly believe that the Products

25  were made in Japan. Klein Rep. at ¶¶ 19, 22, ECF No. 55-4. Defendant argues that Klein's

26  survey evidence is not classwide evidence that the label elements deceive or are material to

27  consumers. Although Defendant has not filed a Daubert motion, Defendant argues that Klein's

28  opinion is unreliable and should be ignored. Opp'n at 12. Defendant argues that Klein's findings

United States District Court
Northern District of California

1    are not applicable on a classwide basis because Klein fails to isolate the effect of the "Licensed

2    By" language on the gold emblem on the front label of the Products, Opp'n at 14–15, and because

3    Klein failed to remove confounding graphics from the Classic label, which Klein used for his

4    survey, that were not present on the Nigori or Tokubetsu Products.

5          Klein used a test-control experimental design in order "to isolate the effect of the elements

6    of the label on relevant consumers' belief regarding the origin of the sake." Klein Rep. ¶ 22. The

7    Test Group of survey respondents was exposed to the product label of the 1.5 L bottle of Sho

8    Chiku Bai Classic Junmai sake, while the control group was exposed to the label of a 375 mL

9    bottle of Eclipse-brand sake, a U.S.-made sake. *Id.* ¶¶ 23–24, Ex. 1 (Klein Rep. at 6), D-25–28,

10   D-29–32. Based on the results of the survey, Klein found that "when both front and back labels

11   were reviewed, 34% of the Test Group versus 8.2% of the Control Group thought the Products

12   were made in Japan, resulting in a 25.8% net deception rate." Mot. at 7–8 (citing Klein Decl. ¶

13   67).

14         Defendant asserts that Klein's survey evidence cannot establish predominance as to

15   Plaintiff's consumer law claims because Klein fails to isolate the effect of the "Licensed By"

16   language on the gold emblem on the front label of the Products. Opp'n at 14–15. This is relevant

17   because, while Plaintiff's complaint alleges that consumers are misled by a combination of three

18   Japanese Origin Representations, Plaintiff plans to calculate damages based on the price premium

19   attributable to the "Licensed By" emblem alone. The Court finds this is ultimately an argument

20   about the mismatch between Plaintiff's theory of liability and theory of damages, rather than one

21   about the predominance as to Plaintiff's consumer law claims, specifically. The Court thus

22   addresses this argument in a separate section of this order. *See* § IV(C)(1)(c), *infra*.

### ii.    Breach of Express Warranty

24         Under California law, a buyer is not required to show reliance to prevail on an express

25   warranty claim because California's express warranty statute "creates a presumption that the

26   seller's affirmations go to the basis of the bargain." *In re Nexus 6P Prods. Liab. Litig.*, 293 F.

27   Supp. 3d 888, 915 (N.D. Cal. 2018) (quoting *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th

28   1213 (2010)). However, as discussed above, the Court finds Plaintiff has failed to demonstrate

1    that consumers who purchased one of the Products from an online retailer would be able to read

2    the "Licensed By" emblem on the front label of the Product as depicted on the retailer's website.

3    The Court thus finds that as to class members who purchased a Product from an online retailer,

4    individual issues of whether class members would have been exposed to the text of the "licensed

5    by" emblem predominate over common issues.

6                            **iii.      Breach of Implied Warranty of Merchantability**

7            Plaintiff brings his breach of implied warranty of merchantability claim under California

8    Commercial Code § 2314.  Am. Compl. ¶¶ 141–48.  Plaintiff alleges that by advertising the

9    Products with the alleged Japanese Origin Representations, "Defendant made an implied promise

10   that the Products were made in Japan."  *Id.* ¶ 146.  Plaintiff alleges that because the Products were

11   not made in Japan, they failed to "conform to the promises . . . made on the container or label[,]"

12   constituting a breach of implied warranty of merchantability under California law.  *Id.* ¶¶ 144,

13   146; Cal. Com. Code § 2314(2)(f).

14           Defendant argues that the Court cannot certify an implied warranty class because Plaintiff

15   is not in vertical privity with Takara, as Tunick purchased the sake from a retailer, rather than

16   directly from Takara.  California law generally requires that a plaintiff in an action for breach of

17   implied warranty be in vertical privity with the Defendant.  *See Clemens v. DaimlerChrysler*

18   *Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  Vertical privity exists where the buyer and seller "are

19   in adjoining links of the distribution chain."  *Id.* (citation omitted).  Accordingly, "an end

20   consumer . . . who buys from a retailer is not in privity with a manufacturer."  *Id.*

21           However, "certain exceptions to the privity rule exist, including the 'foodstuffs' exception,

22   'where it is held that an implied warranty of fitness for human consumption runs from the

23   manufacturer to the ultimate consumer regardless of privity of contract.'"  *Ottesen v. Hi-Tech*

24   *Pharms., Inc.*, No. 19-cv-07271-JST, 2024 WL 5205539, at *14 (N.D. Cal. Dec. 23, 2024)

25   (quoting *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954)); *see also Vaccarezza v.*

26   *Sanguinetti*, 71 Cal. App. 2d 687, 689 (1945) ("The warranty applies to the sale of foodstuffs for

27   human consumption, and runs with the goods to the ultimate consumer, there being no

28   requirement of privity between the ultimate consumer and the manufacturer.").

United States District Court
Northern District of California

1    Here, the Products all qualify as "foodstuffs" because they are beverages intended for

2    human consumption.  *See Arnold v. Dow Chem. Co.*, 91 Cal. App. 4th 698, 720 (2001) (applying

3    privity exception to drugs "on the basis that a drug is intended for human consumption quite as

4    much as is food.").  Courts within this circuit have found that "the foodstuffs exception applies to

5    purely economic harms."  *Bland v. Sequel Nat. Ltd.*, No. 18-cv-04767-RS, 2019 WL 4674337, at

6    *3 (N.D. Cal. Aug. 2, 2019) (collecting cases); *Ottesen*, 2024 WL 5205539, at *14.  Accordingly,

7    the foodstuffs exception applies to Plaintiff's claim for breach of implied warranty of

8    merchantability, and Plaintiff need not demonstrate vertical privity to bring an implied warranty

9    claim.  Thus, this claim does not raise separate problems with respect to class certification.

### iv.    Unjust Enrichment

11    Under California law, "[w]hen a plaintiff alleges unjust enrichment, a court may construe

12    the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp.*,

13    Inc., 783 F.3d 753, 762 (9th Cir. 2015).  "To establish a quasi-contract claim, '[t]he fact that one

14    person benefits another is not, by itself, sufficient to require restitution.  The person receiving the

15    benefit is required to make restitution only if the circumstances are such that, as between the two

16    individuals, it is unjust for the person to retain it.'"  *Smith v. Keurig Green Mountain, Inc.*, No. 18-

17    cv-06690-HSG, 2020 WL 5630051, at *5 (N.D. Cal. Sept. 21, 2020) (quoting *Doe I v. Wal–Mart*

18    *Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009)).

19    Here, Plaintiff claims that Takara unjustly retained a benefit in the form of profits from

20    class members' purchase of the Products because Takara made misleading representations to

21    induce the class members to purchase the Products.  Am. Compl. ¶¶ 151–53.  Plaintiff asks for

22    "restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits,

23    and other compensation obtained by [Takara] from [its] deceptive, misleading, and unlawful

24    conduct[.]"  *Id.* ¶ 154.

25    Unjust enrichment claims are typically individualized.  *See* 1 McLaughlin on Class Actions

26    § 5:60 (11th ed.) ("The majority view is that unjust enrichment claims usually are not amenable to

27    class treatment because the claim requires evaluation of the individual circumstances of each

28    claimant to determine whether a benefit was conferred on defendant and whether the

United States District Court
Northern District of California

circumstances surrounding each transaction would make it inequitable for the Defendant to fail to return the benefit to each claimant"). Here, however, Plaintiff's unjust enrichment claim "is derivative of [his] UCL claim." *Smith*, 2020 WL 5630051 at *5. It does not raise separate predominance issues.

### c.    Plaintiff's Damages Model

As a prerequisite to certification of a class under Rule 23(b)(3), a class action plaintiff must "establish[ ] that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). A model offered as evidence of classwide damages "must measure only those damages attributable to" the plaintiffs' theory of liability. *Id.* at 35. That is, "the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). "[C]lass action plaintiffs may rely on a reliable though not-yet-executed damages model to demonstrate that damages are susceptible to common proof so long as the district court finds that the model is reliable and, if applied to the proposed class, will be able to calculate damages in a manner common to the class at trial." *Lytle v. Nutramax Lab'ys*, Inc., 114 F.4th 1011, 1019 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025). Where a class seeks to recover restitution, "the restitution awarded to class members must correspond to a measurable amount representing the money that the defendant has acquired from each class member by virtue of its unlawful conduct." *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-4387 PJH, 2014 WL 60097, at *11 (N.D. Cal. Jan. 7, 2014).

To establish that damages can be calculated on a classwide basis, Plaintiff "employs a comprehensive, multi-step" approach that incorporates the methodologies set forth in the reports of three of Plaintiff's experts: Robert Klein, Steven Gaskin and Colin Weir. Mot. at 21. As discussed above, in the first step of this approach, Klein developed an internet survey to determine whether potential purchasers of sake are likely to mistakenly believe that the Products were made in Japan. Klein Rep. at ¶¶ 19, 22, ECF No. 55-4. Klein used a test-control experimental design "to isolate the effect of the elements of the label on relevant consumers' belief regarding the origin of the sake." *Id.* ¶ 22. The Test Group was exposed to the product label of the 1.5 L bottle of Sho

1    Chiku Bai Classic Junmai sake, while the Control Group was exposed to the label of a 375 mL

2    bottle of Eclipse-brand sake, another U.S.-made sake.  *Id.* ¶¶ 23–24, Ex. 1 (Klein Rep. at 6), D-

3    25–28, D-29–32.  Based on the results of the survey, Klein found that "when both front and back

4    labels were reviewed, 34% of the Test Group versus 8.2% of the Control Group thought the

5    Products were made in Japan, resulting in a 25.8% net deception rate."  Mot. at 7–8 (citing Klein

6    Decl. ¶ 67).  These results were starker among survey respondents who did not look at the back

7    label (which explicitly states' each product's place of origin) of the test and control groups –

8    48.6% of respondents who did not look at the back label of the Sho Chiku Bai sake believed the

9    sake was made in Japan, compared to 9.6% of respondents in the control group who did not view

10   the back of the Eclipse sake label.  Klein thus concluded "that a significant number of the relevant

11   consumers are likely to be misled by the Products' labeling and believe that the Defendant's sake

12   is made in Japan."  *Id.* ¶ 14.

13        Plaintiff's expert Steven Gaskin then proposes a conjoint analysis designed "to assess the

14   market price premium (measured in dollars and/or percentage terms) associated specifically with

15   the information on the gold medallion that states "Licen[s]ed by TaKaRa Japan, Since 1851."

16   Gaskin Rep. ¶ 9, ECF No. 55-2.  As a final step in calculating classwide damages, Plaintiff's

17   expert Colin Weir explains that he plans to determine aggregate damages by multiplying the price

18   premium attributable to the "Licensed By" emblem on each product by the number of units

19   purchased by class members.  Weir Rep. ¶¶ 48, 68, 70, ECF No. 55-3.  The price premium per

20   Product would be drawn from the results of Gaskin's proposed conjoint analysis.  *Id.* ¶ 68.

21        Defendant argues that Plaintiff's damages model fails because it does not match Plaintiff's

22   theory of liability.  The Court agrees.  Plaintiff's proposed damages model is based on the price

23   premium attributed to just one of the three Japanese Origin Representations alleged in the

24   operative complaint – the gold "Licensed By" emblem on the front label of the Products.  *See* Am.

25   Compl. ¶¶ 38, 40.  Meanwhile, Klein, whose expert report Plaintiff offers to establish that

26   consumers are likely to be misled by Takara's labeling practices in the first instance, did not

27   isolate the effect of any of the various alleged Japanese Origin Representations, let alone the

28   "Licensed By" emblem that forms the basis of Gaskin's price premium model, and consequently

United States District Court
Northern District of California

19

United States District Court
Northern District of California

1    of Plaintiff's damages model.

2    Plaintiff asserts that the Klein survey demonstrates that consumers specifically interpret the

3    "Licensed By" emblem in context as indicating that the Products are made in Japan. Reply at 13.

4    But the Klein survey does no such thing. Certainly, the label of the Classic Junmai sake to which

5    the Test Group was exposed includes the "Licensed By" emblem, while the label of the Eclipse

6    sake, to which the Control Group was exposed, does not. But the results of the Klein survey

7    simply indicate that consumers are more likely to believe that the Sho Chiku Bai Classic Junmai

8    sake is made in Japan, as compared to the 375 mL bottle of Eclipse Sake. Klein Rep. ¶ 13. The

9    Klein survey takes no steps to control for the effect of the "Licensed By" emblem by isolating it

10   from other label elements that Plaintiff alleges mislead consumers into believing the Products are

11   made in Japan. These elements include both the Sho Chiku Bai brand name and "prominent use

12   of Japanese characters," which Plaintiff alleges are misleading (Am. Compl. ¶¶ 38, 40). The

13   survey also took no steps to isolate the Japanese Origin Representations that Plaintiff alleges are

14   deceptive from numerous other elements not alleged in Plaintiff's Amended Complaint that

15   Plaintiff now argues "trick consumers into believing the sake is Japanese-made." Mot. at 5.

16   These include cherry blossom imagery and images of "old Japanese architecture," the latter of

17   which Plaintiff notes is only used on the Tokubetsu Junmai Products. *Id.* The control and test

18   products presented in the survey also differ in other respects, such as bottle shape, that could affect

19   the results. *See* Klein Rep. at D-25–28, D-29–32 (test and control images); Zeithammer Decl. ¶

20   21, ECF No. 64-4 (noting the Eclipse sake bottle used as a control "more closely resembles a

21   white wine bottle" and "does not resemble the Classic 1.5 L bottle tested or any sake bottles I have

22   seen as part of my research in this case"). These numerous differences make it impossible to glean

23   from the Klein survey that respondents specifically interpreted the "Licensed By" emblem to mean

24   that the Product is made in Japan, regardless of their beliefs about the Product's origin. Because

25   Plaintiff's damages calculations are based on the price premium attributable to the "Licensed By"

26   emblem alone, there is a fundamental mismatch between Plaintiff's damages model and theory of

27   liability. Accordingly, Plaintiff's motion to certify a damages class under Rule 23(b)(3) must fail.

28

### 2.    Conclusion – Rule 23(b)(3)

For the reasons stated above, the Court **DENIES** Plaintiff's motion to certify a damages class under Rule 23(b)(3).

## D.    Rule 23(B)(2)

Rule 23(b)(2) provides for class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).

### 1.    Standing

A plaintiff seeking to certify a class under Rule 23(b)(2) "must have standing to seek the declaratory and/or injunctive relief sought on behalf of the class."  *Friend v. Hertz Corp.*, No. 07-cv-5222-MMC, 2011 WL 750741, at *4 (N.D. Cal. Feb. 24, 2011), *aff'd*, 564 F. App'x 309 (9th Cir. 2014).  "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  As injunctive relief is a forward-looking remedy, the threat of future harm must be "actual and imminent, not conjectural or hypothetical."  *Davidson*, 889 F.3d at 967 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  Still, "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase[.]"  *Davidson*, 889 F.3d at 969.

Takara argues that Tunick does not have standing to assert a Rule 23(b)(2) class because he would not purchase the Sho Chiku Bai Nigori Unfiltered sake again.  Tunick contends he has standing to pursue injunctive relief because he currently cannot rely with confidence on Defendant's advertising of the Products.  Reply at 19.

At first glance, Takara's argument appears to hold water.  Tunick testified in his deposition that he was "disappointed with the quality" of the Sho Chiku Bai Nigori Sake he had purchased and that it "was not a bottle that [Plaintiff and his fiancé] would purchase again."  Tunick Dep. at

United States District Court
Northern District of California

1  105:15-24, Ex. C to Decl. of Joseph A. Meckes, ECF No. 64-1.  Tunick further testified that if the

2  Product eventually said "Made in the U.S.A." on its front label, he "probably" would not buy it

3  again.  Tunick Dep. Tr. at 106:23–107:3.

4        However, "the threat of future harm may be the consumer's plausible  allegations that she

5  might purchase the product in the future, despite the fact it was once marred by false advertising or

6  labeling, as she may reasonably, but incorrectly, assume the product was improved."  *Davidson*,

7  889 F.3d at 970.  Tunick alleges that he "would purchase the Products, as advertised, if they were

8  actually made in Japan" and that absent an injunction, he will not be able to "rely with confidence"

9  on Takara's labeling of the Products and determine whether they are actually made in Japan.  Am.

10  Compl. ¶ 16.  Tunick avers that he "would buy the Sho Chiku Bai sake again in the future if [he]

11  knew with confidence that it was made in Japan" and "would be willing to pay more for

12  Defendant's sake if it was actually made in Japan."  Decl. of Colby Tunick ¶¶ 5–6, ECF No. 55-6.

13  *See also* Tunick Dep. at 107:13-19 (testimony that Tunick "would be open to trying [the sake]

14  again" if it was made in Japan "because [he] assume[s] the quality would be better").  The Court

15  finds Tunick's alleged inability to rely with confidence on Defendant's advertising of the Products

16  creates an actual and imminent threat of future harm.  That is, if Products were made in Japan,

17  Plaintiff would buy them.  In order for Plaintiff to do so, he would have to be able to trust that the

18  Products were actually made in Japan.  This would require Defendant to change its labeling

19  practices.  *See Davidson*, 889 F.3d at 971 ("based on Davidson's allegations that she would

20  purchase truly flushable wipes manufactured by Kimberly–Clark if it were possible, her injury is

21  concrete—it is real and not merely abstract.").

22        Takara argues that Tunick's representations that he would purchase the Products if they

23  were made in Japan fail to establish standing because Tunick does not seek to compel Takara to

24  move its operations to Japan, and could not obtain such relief even if he did.  But while the Court

25  cannot compel Defendant to use Japanese ingredients in its sake, to move any of its manufacturing

26  operations to Japan, or to switch to an import model for its products, an injunction requiring

27  Takara to change its labeling practices would remedy the actual and imminent future harm Tunick

28  alleges, i.e., his inability to rely with confidence on Takara's advertising of the Products.  *See*

*Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2018 WL 4952519, at *8 (N.D. Cal. Sept. 25, 2018) (certifying 23(b)(2) class for alleged misrepresentations that beer was brewed in Hawaii and finding that alleged harm "based on [plaintiffs'] 'inability to rely on the validity of the information advertised . . . in deciding whether or not [they] should purchase the product in the future" was sufficient to establish Article III standing) (quoting *Davidson*, 889 F.3d at 971).

Accordingly, the Court finds Plaintiff has Article III standing to seek injunctive relief.

### 2.    Class Certification

Tunick seeks an injunction requiring Takara to change its advertising and labeling practices with respect to the Products and a declaration that Takara's actions violated the law. Am. Compl. ¶¶ 11, 16, 91, 102, 114, 122, 130; Prayer for Relief ¶ B (Am. Compl. at 37).  The Court finds Takara's advertising and labeling practices, in the form of the alleged Japanese Origin Representations that appear on the front label of each of the Products, apply generally to the entire class.

The Court found that common issues do not predominate for purposes of a Rule 23(b)(3) class because online purchasers raise individualized issues concerning whether they were exposed to the "licensed by" emblem when they purchased the Products.  However, "[a]lthough common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2).  It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole.  Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate."  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).  Here, Takara's labeling practices, in the form of the alleged Japanese Origin Representations, apply generally to the entire class because they are on the label of the Products, which every class member sees.  Online purchasers might not have been injured by the labeling practices if the "licensed by" emblem was illegible during purchase, but that does not defeat a Rule 23(b)(2) class.  The Court finds that final injunctive relief or corresponding declaratory relief would be appropriate respecting the class as a whole.

Accordingly, the Court **GRANTS** Plaintiff's motion to certify a class under Rule 23(b)(2).

**E.    Appointment of Class Counsel**

If a class is certified, the Court "must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).

Class counsel has a duty to "fairly and adequately represent the interests of the class."  Fed. R.

Civ. P. 23(g)(4).

In appointing class counsel, courts must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A).  The Court "may consider any other matter pertinent to counsel's

ability to fairly and adequately represent the interests of the class[.]"  Fed. R. Civ. P. 23(g)(1)(B).

The Court finds Plaintiff's counsel have demonstrated they have done substantial work in

identifying and investing potential claims in the action and have dedicated substantial resources to

prosecuting this case on behalf of the proposed class.  Nassir Decl. ¶ 4, ECF No. 55-7.  Plaintiff's

counsel have extensive experience in successfully prosecuting consumer class actions and possess

the resources necessary to vigorously pursue this litigation.  *Id.* & Exs. 16, 17 to Nassir Decl.

Defendant does not argue that the proposed class counsel should not be appointed in the event a

class is certified.  Accordingly, the Court appoints Tunick's counsel, Treehouse Law, LLP and

Clarkson Law Firm, P.C., as class counsel.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's motion to certify an

injunctive relief class under Rule 23(b)(2).  Plaintiff's motion for a damages class under Rule

23(b)(3) is **DENIED**.

The Court certifies a Rule 23(b)(2) class as to Plaintiff's claims under the UCL, FAL and

CLRA.  Pursuant to Rule 23(c)(1)(B), the class is defined as "[a]ll persons who, during the Class

Period, purchased one or more of the Products in California for purposes other than resale at a

retail location or online."  The class period is defined as February 8, 2019, through the present.

United States District Court
Northern District of California

The Court appoints Colby Tunick as the class representative.  Pursuant to Rule 23(g), the Court appoints Treehouse Law, LLP and Clarkson Law Firm, P.C., as class counsel.

The parties are directed to meet and confer regarding a proposed class notice.  The Court sets a further case management conference for October 16, 2025, at 10:00 a.m.  An updated joint case management conference statement is due by October 9, 2025.

**IT IS SO ORDERED.**

Dated: September 15, 2025

THOMAS S. HIXSON
United States Magistrate Judge