United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COLBY TUNICK,

        Plaintiff,

    v.

TAKARA SAKE USA INC., et al.,

        Defendants.

Case No. 23-cv-00572-TSH

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Re: Dkt. No. 95

## I.    INTRODUCTION

Plaintiff Colby Tunick moves for an order granting preliminary approval of a proposed Federal Rule of Civil Procedure 23(b)(2) class settlement with Defendant Takara Sake USA Inc. ECF No. 95.  No opposition has been received.  The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the March 12, 2026 hearing.  For the reasons stated below, the Court **GRANTS** the motion.[1]

## II.    BACKGROUND

### A.    Complaint Allegations

Tunick is a citizen of California and resides in San Diego, California.  Am. Compl. ¶ 15, ECF No. 18.  Takara is a corporation with its principal place of business in Berkeley, California. *Id.* ¶ 17.  Takara is responsible for the manufacturing, labeling, advertising, distribution, and sale of the "Sho Chiku Bai" branded sakes.  *Id.* ¶¶ 1, 17.

Sake is a traditional Japanese alcohol made from fermented rice.  *Id.* ¶ 26.  Almost all sake products in the United States are imported from Japan.  *Id.* ¶ 33.  In 2018, a research study

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 7, 11.

indicated that nearly 80% of consumers stated that they only purchase sake produced in Japan. *Id.* ¶ 35.

Tunick alleges that in or around August 2020, he purchased a 375 mL bottle of Sho Chiku Bai Nigori Unfiltered Sake in San Diego. *Id.* ¶ 15. Tunick believed this product was made in Japan based on the "Sho Chiku Bai" brand name, Japanese lettering displayed on the front label of the product, and a gold emblem stating "Licensed by TaKaRa Japan, Since 1851" on the front label. *Id.* Tunick would not have purchased the product or would have paid significantly less for it if he had known it was not made in Japan. *Id.*

Tunick alleges that (1) Sho Chiku Bai Nigori Unfiltered Sake, (2) Sho Chiku Bai Classic Junmai; and (3) Sho Chiku Bai Tokubetsu Junmai are all deceptively labeled and marketed as made in Japan, when they are actually produced in California. *Id.* ¶¶ 36–37, 41. Tunick alleges the products' labels deceptively suggest they are made in Japan based on: (1) large, bold lettering in Japanese throughout the products' front labels; (2) a gold emblem above the Japanese lettering that states "Licensed by TaKaRa Japan, Since 1851"; and (3) the brand name "Sho Chiku Bai," a Japanese phrase. *Id.* ¶ 38. Tunick alleges Takara also manufactures and sells products made in Japan with substantially similar labeling, which adds to the deception. *Id.* ¶ 43. Tunick also alleges manufacturers negotiate with stores to select prime shelf space for their products, and Takara's products are shelved alongside products made in Japan. *Id.* ¶¶ 50, 52.

**B.    Procedural History**

Tunick filed this case on February 8, 2023 (ECF No. 1) and filed the operative Amended Complaint on April 26, 2023, alleging: (1) violation of the California Consumers Legal Remedies Act (CLRA); (2) violation of the California False Advertising Law (FAL); (3) violation of the California Unfair Competition Law (UCL); (4) Breach of Express Warranty; (5) Breach of Implied Warranty; and 6) Unjust Enrichment. ECF No. 18.

On May 10, 2023, Takara filed a motion to dismiss Tunick's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 20. On June 12, 2023, the Court granted in part and denied in part Takara's motion to dismiss. ECF No. 30; *Tunick v. Takara Sake USA Inc.*, 2023 WL 3958363, at *1 (N.D. Cal. June 12, 2023). The Court dismissed all claims to the extent they

United States District Court
Northern District of California

are based on the purchase of the products: "Sho Chiku Bai Classic Junmai Sake, 180 ml," for the period up until 2021; "Sho Chiku Bai Classic Junmai Sake, 3 Liters," for the entire class period; and "Sho Chiku Bai Classic Junmai Sake, 18 Liters," for the period up until 2021.  ECF No. 30 at 15.

On October 17, 2024, Tunick moved to certify a California class under both Rule 23(b)(2) for injunctive relief and Rule 23(b)(3) for damages.  ECF No. 55.  On September 15, 2025, the Court granted class certification under Rule 23(b)(2) for injunctive relief.  Order, ECF No. 88; *Tunick v. Takara Sake USA Inc.*, 806 F. Supp. 3d 912 (N. D. Cal. 2025).  The Court defined the class as "[a]ll persons who, during the Class Period, purchased one or more of the Products in California for purposes other than resale at a retail location or online," and defined the class period as "February 8, 2019, through the present."  The Court denied certification of a damages class under Rule 23(b)(3), concluding that individual issues regarding the exposure to the "licensed by" emblem predominate for class members who purchased a product from an online retailer and that there is a mismatch between Tunick's damages model and theory of liability.

On March 1, 2024, the parties participated in a mediation session but were unable to reach a resolution.  Sodaify Decl. ¶ 8, ECF No. 95-1.  Following the Court's certification order, the parties renewed their efforts to resolve the matter and engaged in a mediation on November 24, 2025.  *Id*.  That session proved fruitful, as the parties reached a settlement in principle, and they subsequently worked to formalize the settlement terms.  *Id*.; Ex. A (Settlement Agreement).

On December 11, 2025, the parties filed a Notice of Settlement.  ECF No. 93.  The Court vacated all dates and set January 30, 2026 as the deadline to file Tunick's motion for preliminary approval.  ECF No. 94.  Tunick filed the present motion on January 30, 2026.

## C.    Settlement Terms

### 1.    Class

The Settlement defines the Class as: "

> All persons who, during the Class Period, purchased one or more of the Products in California for purposes other than resale at a retail location or online, with the following exceptions: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or

local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer.

Settlement Agreement ¶ 2.10.

### 2.     Relief

The Settlement provides for injunctive relief as follows:

> Defendant will continue its cessation of the Gold Emblem located on the front label of the Products which states "Licensed by TaKaRa Japan, Since 1851," until and unless the Products are manufactured in Japan. Defendant shall not be required to change or replace the labels on any Products manufactured and packaged prior to the Settlement Effective Date or to recall Products, advertisements, or any marketing materials distributed by or at the direction of Defendant prior to the Settlement Effective Date.

*Id.* ¶ 3.1.

### 3.     Notice

The Settlement provides injunctive relief while fully preserving Class members' rights to pursue monetary claims. *See id.* §§ 3.1, 5.1.  As such, the parties agree that Class Members do not possess any right to opt-out of the receipt of benefits under this Settlement Agreement, making the provision of notice to Class Members unnecessary. *Id.* ¶ 8.1 (citing Fed. R. Civ. P. 23(c)(2)(A) and collecting cases).

### 4.     Payment Terms

The Settlement provides for an award of up to $645,000 for attorneys' fees and costs. *Id.* ¶¶ 4.1, 4.3.  It also provides for a service award to Tunick of up to $5,000. *Id.* ¶ 4.2.  The total amount to be paid by Takara under the settlement shall be no more than $650,000. *Id.* ¶ 4.4.  The parties shall bear their own fees and costs for all other fees and costs they incurred in relation to this action. *Id.*

### 5.     Release

Upon the Settlement's effective date, Tunick and the Class shall release and discharge Takara from liability solely for the injunctive relief claims. *Id.* ¶ 5.1.  The release does not prevent the Class from pursuing claims for monetary relief related to past, present, or future purchases of the Products. *Id.*

In addition to the Class release, a separate, individual release exists between Tunick and Takara in the Settlement. *Id*. § 6.1. Under this provision, Tunick and Takara release each other and their related parties from all claims that directly relate to or arise from the action, the Class claims, the individual claims, or Tunick's purchase or use of any Products prior to the Settlement's effective date. *Id*. This individual release by Tunick does not extend to the Class. *Id*.

### III.    LEGAL STANDARD

A class action settlement must be "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), based on the following fairness factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (cleaned up). However, the Court cannot fully assess these until the final approval hearing. Thus, at this stage "a full fairness analysis is unnecessary," *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (cleaned up), and "the settlement need only be potentially fair," *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). Preliminary approval is appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (cleaned up).

Whether a settlement agreement has been negotiated before a class has been certified or after, courts must also undertake an additional search for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (applying *In re Bluetooth*'s red-flag factors to post-class certification settlement approvals).

United States District Court
Northern District of California

## IV.    DISCUSSION

### A.    Class Certification

As the Court has previously certified a class under Rule 23, it "need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable." *Harris v. Vector Mktg. Corp.*, 2012 WL 381202, at *3 (N.D. Cal. Feb. 6, 2012) (*Harris II*) (citing *Denny v. Deutsche Bank, A.G.*, 443 F.3d 253, 270 (2d Cir. 2006)).

### B.    Settlement Process

The Court first considers "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (*Harris I*). It must be satisfied that the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." *Acosta*, 243 F.R.D. at 396 (cleaned up). Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id.*

"'An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.'" *Harris I* (quoting *Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010). This action consisted of a lengthy litigation period spanning nearly three years, which included depositions of Tunick and Takara's Rule 30(b)(6) designees, production and review of thousands of documents, exchange of expert reports, and extensive briefing on motions seeking dismissal and class certification. Sodaify Decl. ¶¶ 5–7. Class Counsel have therefore had a meaningful opportunity to consider the Court's various rulings, take extensive discovery, and gauge the feasibility and benefits of settlement versus continued litigation. *Id.* ¶¶ 9, 11; *see In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair."); *White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, at *13 (C.D. Cal. May 7, 2009) (same). The Settlement was reached only after the parties participated in multiple mediations and arms-length negotiations over the course of months, including informal settlement discussions throughout nearly three years of litigation. Sodaify Decl. ¶¶ 8–9; *see*

6

*Harris I*, 2011 WL 1627973, at *8 (mediation with an experienced mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel."); *Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Accordingly, the Court finds the process here was fair, and this factor weighs in favor of granting preliminary approval.

### C.      Obvious Deficiencies

At this stage, there are no obvious deficiencies in the Settlement Agreement, and this factor weighs in favor of granting preliminary approval.

### D.      Preferential Treatment

The Court next examines whether the settlement agreement "improperly grant[s] preferential treatment." *In re Tableware*, 484 F. Supp. 2d at 1079. While the Settlement does authorize Tunick to seek an incentive award of up to $5,000 for his role as named plaintiff, such "[i]ncentive awards are fairly typical in class action cases . . . to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (cleaned up). Further, the proposed service award here is within the range of possible approval, and the Court will ultimately determine whether Tunick is entitled to such an award and the reasonableness of the amount requested. *See Staton v. Boeing*, 327 F.3d 938, 976-78 (9th Cir. 2003) (discussing cases approving incentive awards in the range of $2,000 to $25,000); *Harris I*, 2011 WL 1627973, at *8 (granting preliminary approval where settlement agreement authorized named plaintiff to seek an incentive award of up to $25,000). In any event, the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable. *See Rodriguez*, 563 F.3d at 958-69; *Staton*, 327 F.3d at 977. Thus, the absence of any preferential treatment supports preliminary approval of the Settlement Agreement.

### E.      Range of Possible Awards

The last inquiry focuses on "substantive fairness and adequacy" and considers plaintiffs'

"expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080 (cleaned up); *see also Harris I*, 2011 WL 1627973, at *11 (noting that courts "must estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount") (cleaned up). "[A] proposed settlement may be acceptable even though it amounts to only to a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 ("[T]he Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate.").

In certifying a Rule 23(b)(2) class, the Court held that injunctive relief is suitable for the class as a whole and denied certification of a Rule 23(b)(3) damages class. ECF No. 88 at 24. The Settlement therefore delivers the full measure of relief the certified class could obtain through continued litigation. The injunctive relief directly addresses the core allegation in the case: that Takara deceptively advertised and labeled the Products with the Japanese origin representation despite being made in California. The Settlement eliminates the challenged practice and prevents Takara from engaging in similar conduct in the future, while preserving the Class's right to seek monetary legal recourse. Courts approve injunctive-relief only settlements where the relief "stops the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent class members from seeking [monetary] legal recourse." *Grant v. Cap. Mgmt. Servs., L.P.*, 2014 WL 888665, at *4 (S.D. Cal. Mar. 5, 2014) (collecting cases).

Although Tunick initially sought damages, the Court's predominance ruling identified individual issues concerning exposure to the challenged representations, particularly for online purchasers, and found a mismatch between his proposed damages model and theory of liability. ECF No. 88 at 10–21. Pursuing damages would therefore require substantial additional expert work, renewed certification briefing, and possible interlocutory appeals, with unclear prospect of success. The Court finds the risks of continued litigation further underscore the reasonableness of the Settlement. Damages classes in false advertising cases can be decertified when plaintiffs cannot establish a reliable damages model. *See Oula Zakaria v. Gerber Prods. Co.*, 2017 WL

United States District Court
Northern District of California

9512587, at *22 (C.D. Cal. Aug. 9, 2017) (decertifying class after finding plaintiff failed to provide an adequate basis to calculate restitution and actual damages), *aff'd*, 755 F. App'x 623 (9th Cir. 2018); *Weigele v. Fedex Ground Package Sys.*, 267 F.R.D. 614, 625 (S.D. Cal. Apr. 5, 2010) (decertifying class after concluding predominance was lacking).  Liability here would also turn on a jury's assessment of whether reasonable consumers were misled, a fact-intensive inquiry depending on competing expert testimony and inherently unpredictable.  *See Lilly v. Jamba Juice Co.*, 2015 WL 2062858, at *7 (N.D. Cal. May 4, 2015) (approving a settlement providing solely injunctive relief where only Rule 23(b)(2) class was certified).  Continuing through summary judgment, trial, and potential appeals could therefore require substantial additional resources with no guarantee of success.

Courts have approved similar settlements where injunctive relief provides direct, meaningful benefits by curbing allegedly unlawful practices.  *See, e.g., In re Ferrero Litig.*, 2012 WL 2802051, at *4 (S.D. Cal. July 9, 2012) ("Defendant agreed to modify the product label to address the fundamental claim raised in Plaintiffs' complaint . . .  The Court concludes that the proposed settlement provides an appropriate remedy to class members.  It both takes into account the strength of Defendant's defenses and obstacles to class-wide recovery, while also addressing the concerns in Plaintiff's complaint"), *aff'd*, 583 F. App'x 665 (9th Cir. 2014); *see also Carr v. Tadin, Inc.*, 2014 WL 7497152, at *7 (S.D. Cal. Apr. 18, 2014), *amended in part*, 2014 WL 7499453 (S.D. Cal. May 2, 2014) (granting approval of settlement with no monetary relief, but where "the injunctive relief offered will provide the Settlement Class with the relief they most desire—a change in product labeling"); *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *5 (N.D. Cal. Nov. 16, 2015) (granting final approval, noting "[t]he Settlement affords meaningful injunctive relief" where "the labeling of the Products shall be substantially revised").

Finally, the Settlement's narrow release reinforces its reasonableness.  Class members retain all claims for monetary relief arising from past or future purchases.  Settlement Agreement § 5.1.  This safeguard is a hallmark of fair injunctive-relief only settlements and ensures that class members are not giving up any rights more than necessary in exchange for the forward-looking relief.  *See Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2024 WL

United States District Court
Northern District of California

United States District Court
Northern District of California

4868182, at *4 (N.D. Cal. Oct. 3, 2024) ("Courts have approved similar settlements providing solely injunctive relief in consumer class actions, particularly where such relief offers direct benefits in curbing allegedly unlawful practices.") (collecting cases).  Because the Settlement provides the full relief available to the certified class, avoids the substantial risks and costs of pursuing uncertain damages, and preserves class members' ability to seek monetary relief, it falls squarely within the range of possible approval.  *See Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012) ("To determine whether a settlement 'falls within the range of possible approval,' a court must focus on 'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'") (citation omitted); *Moore*, 2024 WL 4868182, at *4; *see also Nat'l Rural Telecomms. Coop. v. DIREC-TV, Inc.*, 221 F.R.D. at 526 ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush'") (citation omitted).

Accordingly, the Court finds this factor weighs in favor of granting preliminary approval.

**F.      Class Notice**

In certifying a class under Rule 23(b)(2), the Court "may direct appropriate notice to the class."  Fed. R. Civ. P. 23(c)(2)(A).  As the rule indicates, whether to direct notice is a decision within the court's discretion.  *See Equal Employment Opportunity Comm'n v. Gen. Tel. Co. of Nw., Inc.*, 599 F.2d 322, 334 (9th Cir. 1979), *aff'd sub nom., Gen. Tel. Co. of the Nw., Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318 (1980).  Federal courts within California have held that "[w]hen a class is certified under Rule 23(b)(2) and only provides for injunctive relief, no notice of class certification is required."  *Grant v. Cap. Mgmt. Servs., L.P.*, 2013 WL 6499698, at *6 (S.D. Cal. Dec. 11, 2013) (citing *Kim v. Space Pencil, Inc.*, 2012 WL 5948951, at *4 (N.D. Cal. Nov. 28, 2012)); *Kline v. Dymatize Enters., LLC*, 2016 WL 6026330, at *6 (S.D. Cal. Oct. 13, 2016) (same); *see also Moore*, 2024 WL 4868182, at *4 (holding that class notice is not required where the settlement provides only injunctive relief and does not release the monetary claims of the class).  Courts "typically require less notice in Rule 23(b)(2) actions, as their

10

United States District Court
Northern District of California

outcomes do not truly bind class members" who also lack the right to opt out. *Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at \*8–9 (N.D. Cal. Mar. 18, 2015) (holding that because an injunctive relief settlement class lacks the legal right to opt out, class notice is unnecessary where, as here, the settlement does not release monetary claims); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."); *but see Hart v. Colvin*, 2017 WL 9288252, at \*2 (N.D. Cal. Apr. 17, 2017) (requiring notice by publication in an injunctive-only settlement because class members needed to take action to reopen their disability claims, which were affected by flawed consultative examinations, but declining to direct individual notice because there is no right to opt-out of injunctive relief only).

Courts across the country likewise hold that no notice is required for an injunctive-relief-only class that does not release monetary claims of class members. *See, e.g., Jermyn v. Best Buy Stores*, 2012 WL 2505644, at \*12 (S.D.N.Y. June 27, 2012) ("Because this injunctive settlement specifically preserves and does not release class members' monetary claims, notice to class members is not required."); *Penland v. Warren Cnty. Jail*, 797 F.2d 332, 334 (6th Cir. 1986) ("[T]his court has specifically held that notice to class members is not required in all F.R.C.P. 23(b)(2) class actions") (citations omitted); *DL v. District of Columbia*, 2013 WL 6913117, at \*11 (D.D.C. Nov. 8, 2013) ("[T]he district courts within these circuits that have directly considered the issue have applied the requirement 'more flexibly in situations where individual notice to class members is not required, such as suits for equitable relief'"), *aff'd,* 860 F.3d 713 (D.C. Cir. 2017); *Linquist v. Bowen*, 633 F. Supp. 846, 862 (W.D. Mo. Jan 31, 1986) ("When a class is certified pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, notice to the class members is not required.") (citations omitted), *aff'd,* 813 F.2d 884 (8th Cir. 1987); *Mamula v. Satralloy, Inc.*, 578 F. Supp. 563, 572 (S.D. Ohio 1983) ("This Court has certified this action as a class action under Rule 23(b)(2), and, as such, notice to class members is not required under Rule 23(c)(2).").

Here, the Settlement provides injunctive relief while fully preserving Class members' rights to pursue monetary claims. *See* Settlement Agreement §§ 3.1, 5.1. As such, the Court exercises its discretion and does not direct notice because the Settlement does not alter the

11

United States District Court
Northern District of California

unnamed class members' legal rights.  *See Lilly*, 2015 WL 1248027, at *9.

### G.    Attorneys' Fees

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941.

The Settlement provides that Tunick may request up to $645,000 for attorneys' fees and costs.  Settlement Agreement § 4.3; Sodaify Decl. ¶ 14.  The parties have no other agreement regarding attorneys' fees or costs.  Sodaify Decl. ¶ 14.  The Court recognizes that this action involved significant risk, extensive litigation, and years of work by class counsel, who prosecuted the case on a fully contingent basis, advanced substantial time and resources, and faced a real possibility of no recovery.  As such, the requested fee award seems preliminarily reasonable in light of the complexity of the case, the risks assumed, and the meaningful injunctive relief obtained for the Class.  Accordingly, Tunick shall file a motion for attorneys' fees and costs, which the Court will separately assess along with any objections.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (noting that Rule 23(h) "requires that any class member be allowed an opportunity to object to the fee motion").  Tunick's motion for attorneys' fees shall include declarations and billing records so that the Court may determine an appropriate lodestar figure, and to allow class members the opportunity to object to the requested fees.  *See id.* at 995 (holding that class members must "have an adequate opportunity to oppose class counsel's fee motion").

### V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff Colby Tunick's motion for preliminary approval of the proposed class settlement with Defendant Takara Sake USA Inc.  The Court **ORDERS** as follows:

1. Tunick shall file a motion for attorneys' fees and costs by March 20, 2026.  Takara may file an opposition within 14 days thereafter, and Tunick may file a reply within 7 days thereafter.

2. Tunick shall file a motion for final settlement approval on April 28, 2026.

3. The Court will hear argument on the motion for attorneys' fees and costs and the motion for final settlement approval at the Final Approval Hearing, which will take place in person on June 11, 2026.

4. If the parties wish to adjust any of the above dates, they shall submit a stipulation. The stipulation shall cite, with line numbers if applicable, the portions of this Order and/or the Settlement Agreement that are affected by the stipulation.

**IT IS SO ORDERED.**

Dated: February 27, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

13