UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COLBY TUNICK,

              Plaintiff,

    v.

TAKARA SAKE USA INC., et al.,

              Defendants.

Case No. 23-cv-00572-TSH

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Re: Dkt. Nos. 101, 103

## I.    INTRODUCTION

Plaintiff Colby Tunick moves for an order granting final approval of a proposed Federal Rule of Civil Procedure 23(b)(2) class settlement with Defendant Takara Sake USA Inc. ECF No. 103. Defendant has filed a statement of non-opposition (ECF No. 104), and no opposition has otherwise been filed. The Court held a final fairness hearing on June 11, 2026. For the reasons stated below, the Court **GRANTS** the motion.[1]

## II.    BACKGROUND

### A.    Complaint Allegations

Tunick is a citizen of California and resides in San Diego, California. Am. Compl. ¶ 15, ECF No. 18. Takara is a corporation with its principal place of business in Berkeley, California. *Id.* ¶ 17. Takara is responsible for the manufacturing, labeling, advertising, distribution, and sale of the "Sho Chiku Bai" branded sakes. *Id.* ¶¶ 1, 17.

Sake is a traditional Japanese alcohol made from fermented rice. *Id.* ¶ 26. Almost all sake products in the United States are imported from Japan. *Id.* ¶ 33. In 2018, a research study

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 7, 11.

indicated that nearly 80% of consumers stated that they only purchase sake produced in Japan. *Id.* ¶ 35.

Tunick alleges that in or around August 2020, he purchased a 375 mL bottle of Sho Chiku Bai Nigori Unfiltered Sake in San Diego. *Id.* ¶ 15. Tunick believed this product was made in Japan based on the "Sho Chiku Bai" brand name, Japanese lettering displayed on the front label of the product, and a gold emblem stating "Licensed by TaKaRa Japan, Since 1851" on the front label. *Id.* Tunick would not have purchased the product or would have paid significantly less for it if he had known it was not made in Japan. *Id.*

Tunick alleges that (1) Sho Chiku Bai Nigori Unfiltered Sake, (2) Sho Chiku Bai Classic Junmai; and (3) Sho Chiku Bai Tokubetsu Junmai are all deceptively labeled and marketed as made in Japan, when they are actually produced in California. *Id.* ¶¶ 36–37, 41. Tunick alleges the products' labels deceptively suggest they are made in Japan based on: (1) large, bold lettering in Japanese throughout the products' front labels; (2) a gold emblem above the Japanese lettering that states "Licensed by TaKaRa Japan, Since 1851"; and (3) the brand name "Sho Chiku Bai," a Japanese phrase. *Id.* ¶ 38. Tunick alleges Takara also manufactures and sells products made in Japan with substantially similar labeling, which adds to the deception. *Id.* ¶ 43. Tunick also alleges manufacturers negotiate with stores to select prime shelf space for their products, and Takara's products are shelved alongside products made in Japan. *Id.* ¶¶ 50, 52.

## B.    Procedural History

Tunick filed this case on February 8, 2023 (ECF No. 1) and filed the operative Amended Complaint on April 26, 2023, alleging: (1) violation of the California Consumers Legal Remedies Act (CLRA); (2) violation of the California False Advertising Law (FAL); (3) violation of the California Unfair Competition Law (UCL); (4) Breach of Express Warranty; (5) Breach of Implied Warranty; and 6) Unjust Enrichment. ECF No. 18.

On May 10, 2023, Takara filed a motion to dismiss Tunick's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 20. On June 12, 2023, the Court granted in part and denied in part Takara's motion. ECF No. 30; *Tunick v. Takara Sake USA Inc.*, 2023 WL 3958363, at \*1 (N.D. Cal. June 12, 2023). The Court dismissed all claims to the extent they are based on the

United States District Court
Northern District of California

purchase of the products: "Sho Chiku Bai Classic Junmai Sake, 180 ml," for the period up until 2021; "Sho Chiku Bai Classic Junmai Sake, 3 Liters," for the entire class period; and "Sho Chiku Bai Classic Junmai Sake, 18 Liters," for the period up until 2021.  ECF No. 30 at 15.

On October 17, 2024, Tunick moved to certify a California class under both Rule 23(b)(2) for injunctive relief and Rule 23(b)(3) for damages.  ECF No. 55.  On September 15, 2025, the Court granted class certification under Rule 23(b)(2) for injunctive relief.  Order, ECF No. 88; *Tunick v. Takara Sake USA Inc.*, 806 F. Supp. 3d 912 (N. D. Cal. 2025).  The Court defined the class as "[a]ll persons who, during the Class Period, purchased one or more of the Products in California for purposes other than resale at a retail location or online," and defined the class period as "February 8, 2019, through the present."  The Court denied certification of a damages class under Rule 23(b)(3), concluding that individual issues regarding the exposure to the "licensed by" emblem predominate for class members who purchased a product from an online retailer and that there is a mismatch between Tunick's damages model and theory of liability.

On March 1, 2024, the parties participated in a mediation session but were unable to reach a resolution.  Sodaify Decl. ¶ 8, ECF No. 95-1.  Following the Court's certification order, the parties renewed their efforts to resolve the matter and engaged in a mediation on November 24, 2025.  *Id*.  At that session, as the parties reached a settlement in principle, and they subsequently worked to formalize the settlement terms.  *Id*.; Ex. A (Settlement Agreement).

On December 11, 2025, the parties filed a Notice of Settlement (ECF No. 93), and Tunick subsequently filed a motion for preliminary approval on January 30, 2026 (ECF No. 95).  On February 27, 2026, the Court granted Tunick's motion for preliminary approval.  ECF No. 100; *Tunick v. Takara Sake USA Inc.*, 2026 WL 562109, at *1 (N.D. Cal. Feb. 27, 2026).

Tunick filed the motion for attorney's fees on March 19, 2026 (ECF No. 101) and the motion for final approval on April 28, 2026 (ECF No. 103).

## III.    SETTLEMENT AGREEMENT

**A.    Class**

The Settlement defines the Class as:

All persons who, during the Class Period, purchased one or more of

the Products in California for purposes other than resale at a retail location or online, with the following exceptions: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer.

Settlement Agreement ¶ 2.10.

**B.      Relief**

The Settlement provides for injunctive relief as follows:

Defendant will continue its cessation of the Gold Emblem located on the front label of the Products which states "Licensed by TaKaRa Japan, Since 1851," until and unless the Products are manufactured in Japan. Defendant shall not be required to change or replace the labels on any Products manufactured and packaged prior to the Settlement Effective Date or to recall Products, advertisements, or any marketing materials distributed by or at the direction of Defendant prior to the Settlement Effective Date.

*Id.* ¶ 3.1.

**C.      Notice**

The Settlement provides injunctive relief while fully preserving class members' rights to pursue monetary claims. *Id.* §§ 3.1, 5.1.  As such, the parties agree that class members do not possess any right to opt-out of the receipt of benefits under this Settlement Agreement, making the provision of notice to class members unnecessary. *Id.* ¶ 8.1 (citing Fed. R. Civ. P. 23(c)(2)(A) and collecting cases).

**D.      Payment Terms**

The Settlement provides for an award of up to $645,000 for attorneys' fees and costs. *Id.* ¶¶ 4.1, 4.3.  It also provides for a service award to Tunick of up to $5,000. *Id.* ¶ 4.2.  The total amount to be paid by Takara under the settlement shall be no more than $650,000. *Id.* ¶ 4.4.  The parties shall bear their own fees and costs for all other fees and costs. *Id.*

**E.      Release**

Upon the Settlement's effective date, Tunick and the Class shall release and discharge Takara from liability solely for the injunctive relief claims. *Id.* ¶ 5.1.  The release does not prevent the Class from pursuing claims for monetary relief related to past, present, or future purchases of

United States District Court
Northern District of California

the products. *Id.*

In addition to the class release, a separate, individual release exists between Tunick and Takara in the Settlement. *Id.* § 6.1. Under this provision, Tunick and Takara release each other and their related parties from all claims that directly relate to or arise from the action, the class claims, the individual claims, or Tunick's purchase or use of any products prior to the Settlement's effective date. *Id.* This individual release by Tunick does not extend to the Class. *Id.*

## IV.   DISCUSSION

The approval of a settlement is a multi-step process. At the preliminary approval stage, the Court should grant such approval only if it is justified by the parties' showing that the Court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(B). If the Court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

At the second stage, "after notice is given to putative class members, the Court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. Oct. 8, 2014) (citing *Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the final fairness hearing, the Court must finally determine whether the parties should be allowed to settle the class action pursuant to their agreed upon terms. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

### A.     Class Certification

The Court previously certified a class under Rule 23(b)(2). ECF No. 88. Thus, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment. Nothing in the current submission gives the Court reason to reconsider its prior certification order.

**B.      Adequacy of Notice**

In certifying a class under Rule 23(b)(2), the Court "may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). As the rule indicates, whether to direct notice is a decision within the court's discretion. *See Equal Employment Opportunity Comm'n v. Gen. Tel. Co. of Nw., Inc.*, 599 F.2d 322, 334 (9th Cir. 1979), *aff'd sub nom., Gen. Tel. Co. of the Nw., Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318 (1980). "Federal courts within California have held that when a class is certified under Rule 23(b)(2) and only provides for injunctive relief, no notice of class certification is required." *Tunick*, 2026 WL 562109, at *6 (cleaned up; collecting cases). "Courts across the country likewise hold that no notice is required for an injunctive-relief-only class that does not release monetary claims of class members." *Id.* (collecting cases). Here, the Settlement provides injunctive relief while fully preserving class members' rights to pursue monetary claims. *See* Settlement Agreement §§ 3.1, 5.1. As such, the Court exercises its discretion and finds notice unnecessary. *See id.*; *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2024 WL 4868182, at *4 (N.D. Cal. Oct. 3, 2024).

**C.      Final Approval of the Settlement Agreement**

To grant final approval, the Court must find that the terms of the parties' settlement are fair, adequate, and reasonable under Rule 23(e). In making this determination, courts generally must consider the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).[2]

---

[2] As the parties' settlement agreement was negotiated after class certification, the Court need not consider whether the settlement resulted from collusion among the parties. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

United States District Court
Northern District of California

United States District Court
Northern District of California

As discussed below, a review of the fairness factors indicates the settlement is fair, adequate, and reasonable.

### 1.    The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Court first considers "the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement" and the risks of further litigation. *See Nat'l Rural Telecomm.*, 221 F.R.D. at 526 (cleaned up). Although this action reached settlement before the Court had occasion to consider its merits, the Court need not reach a conclusion about the merits of the dispute now, "for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). To that end, there is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (internal citation omitted).

Despite Tunick's belief that he could prove his claims to a jury, he recognizes the serious risks of proceeding to trial. While he could potentially renew his motion to certify a Rule 23(b)(3) damages class, he faced contested expert reports, anticipated challenges from Takara, and the likelihood of appellate review if he achieved a favorable judgment. These factors underscored the uncertainty and complexity of pursuing further litigation. Nassir Decl. ¶¶ 45, 46, 51, 52, ECF No. 103-1 (detailing risks of continued litigation and certifying a Rule 23(b)(3) class). Even with a certified class under Rule 23(b)(2), a favorable liability verdict is not guaranteed. Tunick would

face the risk of unpredictable jury responses to expert testimony and Takara's challenges to any alleged reliance on the disputed labeling. Further, "Defendant's liability in this case would hinge on a factual determination of whether reasonable consumers were likely to be deceived." *Lilly v. Jamba Juice Co.*, 2015 WL 2062858, at *3 (N.D. Cal. May 4, 2015) (citation and internal quotations omitted); *see also Tunick*, 2026 WL 562109, at *5. The risk of a no-liability jury finding is a concern "as any time that liability hinges on reasonableness, a favorable verdict cannot be certain." *Lilly*, 2015 WL 2062858, at *3 (citation and internal quotations omitted). Tunick avoids the risks of trial through the settlement therefore while guaranteeing relief to himself and the class by requiring Takara to change its labeling practices. The considerable risks of proceeding to trial thus favor settlement approval. *See, e.g.*, *Nat'l Rural Telecomm.*, 221 F.R.D. at 526 ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'") (citations omitted).

The expense, complexity, duration, and risk involved in further litigation strongly favor resolution through the settlement. *See Kline v. Dymatize Enters., LLC*, 2016 WL 6026330, at *5 (S.D. Cal. Oct. 13, 2016) ("[W]hile confident in the merits of their case, Plaintiffs are cognizant of the inherent risks of lengthy litigation. . . . The proposed settlement adequately accounts for these risks."); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (in weighing the risk of future litigation, a court "may consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (internal quotation marks omitted).

Takara has continued to vehemently deny Tunick's allegations that the product labels were false and misleading. If litigation continued, the parties would likely submit further expert testimony, among other costly and unpredictable efforts. Nassir Decl. ¶¶ 41, 50–52. The prompt injunctive relief the Settlement provides is preferable to the attendant costs associated with paying additional experts, continuing motion practice and discovery, facing possible decertification motions, the risk of a motion for summary judgment granted against Tunick, the risk of the Court

United States District Court
Northern District of California

or a jury disagreeing on materiality, or that, after resolution, the action would be appealed. *See Oula Zakaria v. Gerber Prods. Co.*, 2017 WL 9512587, at \*22 (C.D. Cal. Aug. 9, 2017) (decertifying class after finding plaintiff failed to provide an adequate basis to calculate restitution and actual damages), *aff'd* 2018 WL 5977897 (9th Cir. Nov. 14, 2018); *Weigele v. Fedex Ground Package Sys., Inc.*, 267 F.R.D. 614, 625 (S.D. Cal. Apr. 5, 2010) (decertifying class after concluding predominance was lacking). The Court has already determined that the risks of continued litigation support approval of the Settlement. *See Tunick*, 2026 WL 562109, at \*5.

Given the risks and costs of continued litigation, the immediate reward to class members through settlement is preferable. Thus, the challenges Tunick would face should this case move forward instead of settling, in contrast to the finality and speed of recovery under the parties' agreement, weigh in favor of approving the Settlement.

### 2.    Settlement Terms

When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Nat'l Rural Telecomm.*, 221 F.R.D. at 527. Given that only a Rule 23(b)(2) class has been certified in this action, the injunctive relief provided for by the Settlement represents a positive outcome for the Class. Courts approve injunctive relief only settlements in consumer actions where, as here, class members' rights to pursue damages are not released and the injunctive relief directly benefits the class by curbing the allegedly unlawful practices. *See Tunick*, 2026 WL 562109, at \*5 (citing *Carr v. Tadin, Inc.*, 2014 WL 7497152, at \*7 (S.D. Cal. Apr. 18, 2014), *amended in part*, 2014 WL 7499453 (S.D. Cal. May 2, 2014) (granting approval of settlement with no monetary relief, but where "the injunctive relief offered will provide the Settlement Class 'with the relief they most desire—a change in product labeling.'"). The Court determined at the preliminary approval stage that the injunctive relief secured addresses the core issues of the case in a fair and reasonable manner by curbing the allegedly unlawful practices and does not release the class members' monetary claims. *Id.* No reason exists to depart from this earlier conclusion.

Tunick alleges Takara deceptively advertised and labeled the products with the Japanese

United States District Court
Northern District of California

origin representation despite being made in California.  The injunctive relief provided for in the Settlement directly addresses this practice and prevents Takara from engaging in similar conduct in the future.  Settlement Agreement § 3.1.  The Settlement provides this relief while preserving the Class's rights to seek monetary legal recourse if desired.  *Id.* §§ 5.1, 6.1.  The outcome represents a meaningful victory for Tunick and the Class, as it directly confronts the central allegations of the lawsuit and provides substantial benefits to consumers.  *See Grant v. Capital Mgmt. Servs., L.P.*, 2014 WL 888665, *4 (S.D. Cal. Mar. 5, 2014) (approving settlement that "stops the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent class members from seeking [monetary] legal recourse"); *see also Tunick*, 2026 WL 562109, at *5 ("Courts have approved similar settlements where injunctive relief provides direct, meaningful benefits by curbing allegedly unlawful practices.") (collecting cases).

The Settlement requires Takara to cease the Japanese origin representation until and unless the products are manufactured in Japan.  Settlement Agreement § 3.1.  With only a Rule 23(b)(2) class certified, this injunctive relief represents a positive outcome for Tunick and the Class.  The changes to the products' labeling practices address the core of Tunick's claims that the Japanese origin representation was misleading to consumers, and the relief secured in the Settlement directly addresses Tunick's claims.  *See Tunick*, 2026 WL 562109, at *5.  As the Court found in its preliminary approval order, the injunctive relief is fair, reasonable, and adequate, and thus weighs strongly in favor of granting final approval to the Settlement.  *Id.* at *5, 6; *see also Lilly*, 2015 WL 2062858 at *6 (approving a settlement providing solely injunctive relief where only Rule 23(b)(2) class was certified); *Moore*, 2024 WL 4868182, at *4 ("Courts have approved similar settlements providing solely injunctive relief in consumer class actions, particularly where such relief offers direct benefits in curbing allegedly unlawful practices.") (collecting cases).

### 3.    Extent of Discovery Completed and Stage of Proceedings

In the context of class action settlements, if the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  Rather, a court's focus is on whether "the parties carefully investigated the claims before reaching a

United States District Court
Northern District of California

United States District Court
Northern District of California

resolution." *Ontiveros*, 303 F.R.D. at 371.

Rule 23(e)(2)(B) directs the Court to consider whether "the [proposed settlement] was negotiated at arm's length." The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965. Indeed, where a settlement is reached through arm's-length negotiations conducted by experienced counsel, it is presumed fair and reasonable. *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010). That presumption applies here.

First, the participation of respected, neutral mediators weighs strongly in favor of approval. The Settlement was reached with the assistance of two experienced mediators, the Honorable Amy Hogue (Ret.) and the Honorable Robert A. Baines (Ret.), whose involvement confirms that the negotiations were serious and adversarial. Nassir Decl. ¶ 23; *see Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015) ("[A]ssistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Kline*, 2016 WL 6026330, at *5 ("That the settlement was reached with the assistance of an experienced mediator further suggests that the settlement is fair and reasonable.") (citation omitted); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 946 ("[The] presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness."). The Court has already recognized that "the process here was fair, and this factor weighs in favor of granting preliminary approval." *Tunick*, 2026 WL 562109, at *4.

Second, the Settlement is the product of an informed, fully developed record. Courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case before settling. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). This case has been pending for more than three years, during which time Tunick's and Takara's Rule 30(b)(6) designees were deposed, thousands of documents were produced and reviewed, expert reports were exchanged, and the parties engaged in extensive briefing on motions to dismiss and for class certification. Nassir Decl. ¶¶ 20–22. This substantial record gave class counsel a meaningful opportunity to assess the Court's rulings, take targeted discovery, and weigh the benefits of settlement against the risks and costs of continued litigation. Settlements reached

United States District Court
Northern District of California

under these conditions are presumed fair. *See In re Wireless Facilities*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair); *White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, at *13 (C.D. Cal. May 7, 2009) (same). Taken together, the arm's-length nature of the negotiations, the involvement of two experienced neutrals, and the depth of the factual and legal record developed before settlement all weigh decisively in favor of final approval.

The Court therefore affirms its preliminary determination and finds that the extent of discovery and stage of proceedings support approval of the Settlement.

### 4.    Experience and Views of Counsel

"The Ninth Circuit recognizes that parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Knapp*, 283 F. Supp. 3d at 833 (citation omitted). Thus, Courts grant "great weight . . . to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017) (quoting *Nat'l Rural Telecomm.*, 221 F.R.D. at 528). A court must consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). In making this determination, courts ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Tunick and class counsel satisfy both requirements and have adequately represented the Class.

Tunick's interests align with the other class members. His claims are typical because, like other consumers nationwide, he purchased Takara's sake products with the Japanese origin representation and alleges he was deceived by those representations to believe the products were from Japan. *See* Am. Compl. ¶ 15; Tunick Decl. ¶ 2, ECF No. 101-13; *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) ("The claims of Lead Plaintiff and the other Settlement Class Members arise from the same alleged conduct[.]").

12

Throughout this litigation, Tunick has actively participated in discovery, responded to document requests, sat for deposition, and worked closely with class counsel to achieve the best outcome for the Class. Tunick Decl. ¶ 4. His willingness to serve as class representative for over three years, despite the burdens of discovery and the uncertainties of litigation, demonstrates his adequacy and commitment to the class and the cause. *Id.* ¶ 5.

Tunick also retained highly experienced counsel with a strong track record of prosecuting consumer protection and false advertising class actions. Clarkson Law Firm and Treehouse Law have successfully litigated numerous cases involving deceptive labeling under California's consumer protection laws. *See* Nassir Decl. ISO MFA ¶ 3, Ex. A, ECF No. 101-11 (Treehouse Law Firm Resume); Sodaify Decl. ¶ 37, Ex. B, ECF No. 101-3, (Clarkson Law Firm Resume). Courts, including those in this District, have recognized counsel's extensive experience in complex consumer litigation and have found them adequate to represent class members. *See* ECF Nos. 101-3; 101-11; *Swetz v. GSK Consumer Health, Inc.*, 2021 WL 5449932 (S.D.N.Y. Nov. 22, 2021) (false labeling of products as "100% Natural" and "Clinically proven to curb cravings"; Clarkson Law firm appointed class counsel and final approval of $6.5 million nationwide class granted by Hon. Nelson S. Roman); *Prescott v. Bayer Healthcare LLC*, 2021 WL 12331574 (N.D. Cal. Dec. 15, 2021) (granting final approval of class action settlement and appointing Clarkson Law Firm, P.C. class co-counsel); *Hezi v. Celsius Holdings, Inc.*, 2023 WL 2786820, at *2 (S.D.N.Y. Apr. 5, 2023) (finding that "Clarkson Law Firm, P.C. has fairly and adequately protected the interests of the Settlement Class and are qualified to represent the Settlement Class and are, therefore, appointed as Class Counsel"); *Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) (granting final approval of nationwide class settlement in a consumer class action litigated by current managing partners of Treehouse Law); *Hesse v. Godiva Chocolatier, Inc.*, 2022 WL 22895466, at *17 (S.D.N.Y. Apr. 20, 2022) (same). Class counsel is equally adequate to represent the Class here, and their track record demonstrates vigorous and effective advocacy at every stage of the litigation, including: (i) defeating Takara's motion to dismiss; (ii) securing class certification under Rule 23(b)(2); (iii) conducting extensive fact and expert discovery; and (iv) negotiating a nationwide settlement after arms-length mediation with an

13

experienced neutral.  Nassir Decl. ¶¶ 20–23.

"The recommendations of plaintiff['s] counsel should be given a presumption of reasonableness" when contemplating the approval of a proposed settlement.  *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) (citation omitted).  Here, the opinion of class counsel supporting the Settlement "is accorded considerable weight" because class counsel have substantial experience in class action litigation and with class action litigation specific to California's consumer protection statutes and false labeling laws.  Nassir Decl. ¶ 35; *see also* ECF No. 101-11 (Treehouse Law Firm Resume); ECF No. 101-3 (Clarkson Law Firm Resume); *Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

Based on their experience and reasoned judgment, the information learned through extensive fact and expert discovery, and legal research for this and similar cases, class counsel concluded that the Settlement provides exceptional results for the Class while avoiding the uncertainties of continued and protracted litigation.  Nassir Decl. ¶¶ 50–52.  Accordingly, the experience and views of counsel also weigh in favor of approving the settlement.

### 5.    Presence of a Government Participant

Here, no government participant is involved, so the Court does not weigh this factor.  *See Lilly*, 2015 WL 2062858, at *3.

### 6.    Reaction of Class Members

Similarly, because notice is "not necessary, the reaction of the class is not considered in weighing the fairness factors."  *Id.*; *Jermyn v. Best Buy Stores*, 2012 WL 2505644, at *6 (S.D.N.Y. June 27, 2012) ("[B]ecause class members' monetary claims are not being released and instead remain intact, no notice is required.  Therefore, this factor is not relevant to the settlement approval analysis."); *Kim v. Space Pencil, Inc.*, 2012 WL 5948951, at *6 (N.D. Cal. Nov. 28, 2012) ("[T]he reaction of class members is not relevant here because notice [is] not required under Federal Rule of Civil Procedure 23(e) and there is no binding effect on the class nor is there a

14

release being provided.").  Regardless, the parties are unaware of any negative reaction to the Settlement as there are no objections from class members that Tunick is aware of, and the parties have not received any objections stemming from CAFA notice to United States Attorney Generals of all 50 states and territories.  Nassir Decl. ¶ 25.

### 7.    Summary

In sum, the fairness factors weigh in favor of granting Tunick's motion for final approval of the class action settlement.  The Court is satisfied that the Settlement Agreement was the product of arms-length negotiations between experienced and professional counsel.  Accordingly, the Settlement Agreement passes muster under Rule 23(e) and final approval is appropriate.

### D.    Motion for Attorneys' Fees, Costs, and Class Representative Incentive Award

#### 1.    Attorneys' Fees

##### a.    Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The Ninth Circuit has held that when state substantive law applies, attorneys' fees are to be awarded in accordance with state law.  *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002).  California courts apply the lodestar method in class actions governed by California law.  *Lealao v. Beneficial California, Inc.,* 82 Cal. App. 4th 19, 26 (2000) (applying California law); *see Meister v. Regents of Univ. of California,* 67 Cal. App. 4th 437, 448–49 (1998) ("the California Supreme Court intended its lodestar method to apply to a statutory attorney's fee award unless the statutory authorization for the award provided for another method of calculation.").  Similarly, under federal law, "in . . . injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof."  *Hanlon,* 150 F.3d at 1029; *see Yeagley v. Wells Fargo & Co.,* 365 Fed. App'x 886, 887 (9th Cir. 2010) (finding the lodestar method to be appropriate in calculating attorney's fees where injunctive relief was sought and no common fund was created).

"Under the lodestar method, a court need not determine the 'value' of particular injunctive relief because fees are calculated through an assessment of time expended on the litigation,

15

counsel's reasonable hourly rate and any multiplier factors such as contingent representation or quality of work." *In re Ferrero Litigation,* 583 Fed. App'x 665, 668 (9th Cir. 2014).  Courts may then reduce or enhance the lodestar by applying a multiplier to take into account the complexity of the action, as well as other factors such as the quality of representation and the risk of nonpayment.  *Hanlon,* 150 F.3d at 1029.  The party seeking fees bears the burden of providing documentation and other evidence, including their own affidavits or rates counsel has received in comparable cases, that their hourly rate is consistent with similarly experienced attorneys in the relevant community.  *Id.*

"While extensive detail about how an attorney or paralegal spends their time is not necessary, plaintiff's counsel should identify the general subject matter of their time expenditures." *Lilly*, 2015 WL 2062858, at *5 (cleaned up) (citing *E.E.O.C. v. Harris Farms, Inc.,* 2006 WL 1028755, at *4 (E.D. Cal. Mar. 1, 2006)).  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Wolph v. Acer American Corp.,* 2013 WL 5718440, at *4 (N.D. Cal. Oct. 21, 2013) (citation omitted).

### b.    Analysis

Class counsel state that the full lodestar total for the work completed would be $967,701.50, based on 1,282.1 hours multiplied by counsel's proposed hourly rates, but they have agreed to accept a reduced lodestar of $645,000.  Sodaify Decl. ¶ 44.  Class counsel's declarations detail the work performed over the course of nearly three years of litigation.  *See id*. ¶¶ 13–24, 44 (Charts 1–2), 47 (Chart 3), 56–60, ECF No. 101-1; *id*., Ex. H (Clarkson Law Firm time records lodged for in-camera review), ECF No. 101-9; Nassir Decl. ¶¶ 7–9, ECF No. 103-1; *id*., Ex. B (Treehouse Law time records lodged for in-camera review).  This is summarized as follows:

| Name | Status | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Ryan Clarkson | Managing Partner | $1,385.00 | 24 | $33,240 |
| Tim Giordano | Partner | $1,385.00 | 18 | $24,930 |
| Bahar Sodaify | Partner | $1,175.00 | 351.1 | $412,542.50 |
| Benjamin Fuchs | Sr. Associate | $790.00 | 28.2 | $22,278 |

United States District Court
Northern District of California

| Cassandra Rasmussen | Sr. Associate | $695.00 | 2.9 | $2,015.50 |
|---|---|---|---|---|
| Alan Gudino | Sr. Associate | $695.00 | 252.1 | $175,209.50 |
| Kelsey Elling | Sr. Associate | $660.00 | 85.3 | $56,298 |
| Jay Zheng | Associate | $490.00 | 74.5 | $36,505 |
| Ryan Ardi | Associate | $470.00 | 183.6 | $86,292 |
| Samuel Gagnon | Associate | $465.00 | 87.9 | $40,873.50 |
| Kiryl Karpiuk | Associate | $450.00 | 96.5 | $43,425 |
| Mikaela Clinton | Associate | $400.00 | 19.4 | $7,760 |
| Stephanie Satow | Sr. Paralegal | $450.00 | 44.1 | $19,845 |
| Emily Torromeo | Sr. Paralegal | $450.00 | 12 | $5,400 |
| Nestor Castillo | Paralegal | $435.00 | 2.5 | $1087.50 |
| | | **TOTAL:** | **1282.1** | **$967,701.50** |

Sodaify Decl. ¶ 44. Class counsel has also provided evidence that their rates are consistent with the non-contingent market rates charged by attorneys of similar experience and skill for comparable complex class action work, as well as evidence from cases in which courts have found similar and higher rates to be reasonable for attorneys performing similar services. *Id.* ¶ 50.

"Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The Court also finds the requested hourly rates reasonable in light of rates charged in similar actions in this District. *See Koeppen v. Carvana, LLC*, 2024 WL 3925703, at *12, 15 (N.D. Cal. Aug. 22, 2024) (approving attorneys' fees ranging from $575 to $1,495); *Harbour v. Cal. Health & Wellness Plan,* 2024 WL 171192, at *8 (N.D. Cal. Jan. 16, 2024) (holding hourly rates ranging from $425 to $1,200 to be "within the range of those approved in other similar cases . . ."); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (finding rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals to be

reasonable); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at \*9 (N.D. Cal. July 15, 2022) (approving hourly rates ranging from $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates); *Joh v. Am. Income Life Ins. Co.*, 2021 WL 66305, at \*8 (N.D. Cal. Jan. 7, 2021) (collecting cases approving similar rates in class actions).

Counsel have also provided sufficient support for the number of hours requested. *See* Sodaify Decl. ¶¶ 13-24, 44, 47, 56-60 & Ex. H; Nassir Decl. ¶¶ 7–9 & Ex. B. In light of counsel's detailed declarations and time records, the Court finds the hours claimed are supported. Therefore, the Court **GRANTS** Plaintiff's request for attorneys' fees.

### 2.    Costs

Attorneys are entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted); Fed. R. Civ. P. 23(h) (permitting the court to award nontaxable costs that are authorized by the parties' agreement). "To support an expense award, Plaintiffs should file an itemized list of their expenses by category and the total amount advanced for each category in order for the Court to assess whether the expenses are reasonable." *Lilly*, 2015 WL 2062858, at \*6 (collecting cases).

Here, class counsel has incurred out-of-pocket costs and expenses totaling $286,569.31. *See* Sodaify Decl. ¶¶ 46–47; Nassir Decl. ¶¶ 12–13. These include court filing fees, copying costs, courier charges, expert fees, court reporter and videographer fees, mediation fees, legal research charges, telephone and facsimile costs, travel expenses, postage, and other related litigation costs. These costs are all well documented and reasonable. *See Ramirez v. Trans Union, LLC*, 2022 WL 17722395, at \*11 (N.D. Cal. Dec. 15, 2022) (approving $299,276.10 in litigation costs); *Dixon v. Cushman & Wakefield W., Inc.*, 2022 WL 1189883, at \*12 (N.D. Cal. Apr. 21, 2022) (approving similar litigation costs). Accordingly, the Court awards $286,569.31 in costs.

### 3.    Incentive Award

"Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958 (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class

18

United States District Court
Northern District of California

representatives into a conflict position from day one"). Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Id.* at 958-59. The decision to approve such an award is a matter within the Court's discretion. *In re Mego Financial Corp. Sec. Litigation*, 213 F.3d 454, 463 (9th Cir. 2000). Although incentive awards are viewed more favorably than incentive agreements, excessive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Rodriguez*, 563 F.3d at 960 (internal quotation marks and citation omitted). Thus, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

In determining whether an incentive award is reasonable, courts generally consider:

> (1) the risk to the class representative in commencing a suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Covillo v. Specialtys Café*, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008).

Tunick has played an active and meaningful role throughout the litigation. Tunick Decl. ¶ 4; Sodaify Decl. ¶¶ 66–70. Over the course of nearly three years, he worked closely with class counsel to assist in the prosecution of this action and to ensure that the interests of the Class were effectively represented. *Id.* He remained regularly engaged with counsel regarding the status and

United States District Court
Northern District of California

strategy of the case, stayed informed about developments in the litigation, reviewed pleadings and other key case materials, responded to discovery requests, and prepared for and provided deposition testimony. *Id*. Tunick also carefully reviewed the settlement agreement to understand its terms and the relief obtained for the Class before agreeing to its approval. *Id*.

The Court is satisfied that Tunick's individual contribution to this case warrants an incentive award. The requested amount of $5,000 is deemed presumptively reasonable in the Ninth Circuit. *See Lopez v. Bank of Am., N.A.*, 2015 WL 5064085, at *8 (N.D. Cal. Aug. 27, 2015) (incentive awards of $5,000 are presumptively reasonable) (citing *Harris v. Vector Mktg. Corp.*, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases)). The Court also notes the settlement protects the rights of class members by ensuring they retain their individual damages claims, and Tunick's award will not reduce class recovery, as the classwide settlement is for injunctive relief only. *See Lilly*, 2015 WL 2062858, at *7 (finding $5,000 award reasonable where settlement protected class members' individual damages claims and award would not reduce class recovery). In light of the time expended by Tunick to secure injunctive relief, the Court finds the proposed incentive award reasonable. *See Campbell v. Facebook, Inc.*, 2017 WL 3581179, at *4, *7 (N.D. Cal. Aug. 18, 2017), *aff'd*, 951 F.3d 1106 (9th Cir. 2020) (approving incentive award of $5,000 in injunctive relief only class settlement); *In re Yahoo Email Litig.*, 2016 WL 4474612, at *12 (N.D. Cal. Aug. 25, 2016) (approving an incentive award of $5,000 where the class settlement included declaratory and injunctive relief).

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff Colby Tunick's motion for final approval of the parties' class action settlement. The Court also **GRANTS** Tunick's motion for attorney's fees and costs and an incentive award in the amount of $645,000, which represents $358,430.69 in attorneys' fees, $286,569.31 in costs, and a $5,000 incentive award to Plaintiff Colby Tunick. The parties shall file a proposed judgment that complies with Federal Rule of Civil Procedure 23(c)(3) by June 18, 2026.

**Post-Distribution Accounting**

In accordance with the Northern District's Procedural Guidance for Class Action

20

Settlements, within 21 days after payment of the fees and costs awarded herein, class counsel shall file a post-distribution accounting that provides the relevant information listed at: https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements.  Counsel should provide this information using the Court's Post-Distribution Accounting Form and file it as ECF event "Post-Distribution Accounting" under Civil Events > Other Filings > Other Documents.

**IT IS SO ORDERED.**

Dated: June 11, 2026

_____
THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California